James P. **LEE**, Jr.

v.

William L. **THORNTON**, District Director of Customs, et al.

Ronald **RICH**

v.

William L. **THORNTON**, District Director of Customs, et al.

**Civ. A. Nos. 6451, 6762.**

United States District Court, D. Vermont.

Jan. 22, 1974.

Vermont Legal Aid, Inc., Burlington, Vt., for plaintiffs.

George W. F. Cook, U. S. Atty., Rutland, Vt., for defendants.

Before OAKES, Circuit Judge, and HOLDEN and COFFRIN, District Judges.

## OPINION AND ORDER

OAKES, Circuit Judge.

The relevant facts have been stipulated by the parties. On October 4, 1971, plaintiff Lee's 1966 Volkswagen van was observed by a Border Patrol agent to be crossing into the United States from Canada at Alburg Springs, Vermont, although the customs station at Alburg Springs was closed. Agent Peck, who observed the crossing, followed the vehicle, driven at that time by an acquaintance of Lee, to a point in East Alburg, Vermont, where the vehicle was stopped. Lee told Peck that he had not gone to the immigration and customs station at Alburg, as directed by the signs at Alburg Springs, because he thought that his vehicle did not have sufficient fuel to reach it. Lee was ordered to proceed

with the van and his passengers, including a Canadian national, to Swanton Immigration Headquarters.

After a search of the van in Swanton, Lee was informed by customs agents that they had found several items of foreign manufacture with no proof of domestic purchase, plus two clip scales and one gram of marijuana seeds; that Lee and the others were free to leave; but that the van and personal property had been seized and would be held by the officials. Lee had no opportunity to challenge the seizure of the van at that time.

On the next day, October 5, 1971, Lee contacted defendant Thornton, the District Director of the Bureau of Customs, concerning the release of the property and was told that a cash deposit in the sum of $1,800 would be required to secure release of the van. On October 19, 1971, the Director advised Lee that, having been charged with violations of 19 U.S.C. § 1459, 19 U.S.C. § 1595a and 21 U.S.C. § 881, he was assessed a penalty of $1,845.00 and that the van and personal property therein were subject to forfeiture as an additional penalty. The letter also advised Lee of his right to file a petition for "mitigation and remission" under 19 U.S.C. § 1618. Lee filed that petition on October 27, 1971, in which he set forth his version of the circumstances surrounding the events of October 4. On November 1, 1971, Thornton notified Lee by letter that the fine had been remitted in full and the forfeiture of the van mitigated to $100 "in view of the fact that the vehicle was found being used to transport marihuana." Unable to post a $250 bond to force the Government to institute a libel of forfeiture under 19 U.S.C. § 1608, Lee paid the $100 and secured the release of the van.

Plaintiff Rich, his wife and two minor children crossed the border from Canada into the United States via the Wolfridge road in Alburg, Vermont, on October 27, 1971, and did not pass through a customs station. Under observation by a Border Patrol agent, Rich's automobile was stopped in the vicinity of Swanton, Vermont. Rich was accused by the agent of having crossed the border illegally and was directed to proceed to the border station at Highgate, Vermont. At the Highgate station, the automobile was searched and seized, and Rich was advised of the nature of the charge against him under 19 U.S.C. § 1459 and the statutory penalty that could be assessed under 19 U.S.C. § 1460. Like Lee, he was informed that he could file an immediate petition for remission and mitigation of penalties pursuant to 19 U.S.C. § 1618. Rich filed a petition at that time and was told by Customs Inspector Clark that a cash deposit of $50 "toward the ultimate mitigated penalty" would secure the release of the automobile under 19 U.S.C. § 1614.[1] Rich paid the deposit and the automobile was released. On January 6, 1972, Rich received a "Notice of Penalty Incurred and Demand for Payment" (Customs Form 5955A) which, among other things, advised him as to his rights and the procedures required to request administrative relief. No further petition was filed, and on January 14, 1972, Thornton notified Rich by letter that the penalty had been mitigated to $25 and that this penalty would be deducted from his $50 deposit, the balance owed to be returned in due course. The discussion with Inspector Clark was the only opportunity given to Rich during the course of events to state his version of the facts in person.

1. Although the record is not free from doubt, this determination apparently constituted a finding by Clark that Rich's automobile was worth $50, since under 19 U.S.C. § 1614, the deposit must cover the full value of the vehicle as appraised under 19 U.S.C. § 1606.

Presumably a similar finding was also made with respect to defendant Thornton's statement to plaintiff Lee that an $1,800 deposit would be required to secure the release of his van, *supra*.

## I. PLAINTIFFS' CLAIMS.

On motion, plaintiffs' complaints challenging the constitutionality, both facially and as applied, of the statutory provisions of the *United States Code* under which their property had been seized and penalties assessed, were consolidated for hearing before a three-judge district court convened pursuant to 28 U.S.C. § 2282. More specifically, plaintiff Rich alleged that the fourth amendment required a probable cause hearing prior to the search and seizure of his automobile, that the fifth amendment was violated by his being required to post a bond to secure the release of his vehicle without a prior hearing, and that the procedures mandated by the *United States Code* to effect forfeiture and remission or mitigation of penalties imposed upon him violated both his fifth amendment right to due process and various rights guaranteed by the sixth amendment. He asks this court to declare 19 U.S.C. §§ 1460 and 1618 to be unconstitutional and to enjoin their enforcement. Rich also asks for damages in the amount of $2,000 and the setting aside of the District Director's final assessment of the $25 fine and a concomitant remission of that $25 to him.

■ Plaintiff Lee likewise contends that the seizure and holding of his property violated his fifth amendment right to due process and that the forfeitures and penalties were imposed by procedures that violated his rights as guaranteed under the fourth, fifth, and sixth amendments. Jurisdiction is invoked by both plaintiffs under 28 U.S.C. §§ 1346(a)(2), 1337, 1355, 1356 & 1361. We conclude that we have jurisdiction under 28 U.S.C. § 1346(a)(2) to review the constitutionality of the challenged statutes. Melendez v. Shultz, 356 F. Supp. 1205, 1208 (D.Mass.1973) (three-judge court).

■■ We hold first that both plaintiffs Rich and Lee have standing to attack the constitutionality of the procedures under which their property was seized and their fines assessed, even though it is stipulated that neither plaintiff exhausted his administrative remedies under the pertinent statutes and even though plaintiffs' property has been returned and the time period in which administrative remedies might be sought has passed. It would serve no purpose to require plaintiffs to exhaust remedies "the alleged inadequacy and untimeliness of which are cornerstones . . . ." of their claims. *Id. Cf.* Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973). See also Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 241–243, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring). We do not regard the payments of the respective fines as mooting the otherwise substantial constitutional claims asserted by plaintiffs. *Cf.* Ward v. Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920).

## II. BASIC INTERESTS INVOLVED.

■ We commence with recognition of the great importance to be attached to the governmental interests here at stake. We deal here directly with statutes and regulations that permit the Government to regulate the entry of foreign nationals and dangerous substances into the United States and to exercise its right to collect duty on merchandise imported into the country. No one doubts the Government's power to exclude aliens from the country, Chae Chan Ping v. United States, 130 U.S. 581, 603–604, 9 S.Ct. 623, 32 L.Ed. 1068 (1889), or that the power to do so, or to collect duties, can be exercised through routine inspection of individuals or conveyances seeking to cross the borders. Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The Supreme Court has recently reaffirmed *Carroll* while applying its rationale to the question whether warrantless searches of vehicles traveling on a road no closer than 20 miles to the Mexican border were violative of the fourth amendment's proscription of "unreasonable searches and seizures." Almeida-

Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The *Almeida-Sanchez* decision crystallized the central issues of that case in the following words:

> It is not enough to argue, as does the Government, that the problem of deterring unlawful entry by aliens across long expanses of national boundaries is a serious one. The needs of law enforcement stand in constant tension with the Constitution's protections of the individual against certain exercises of official power. It is precisely the predictability of these pressures that counsels a resolute loyalty to constitutional safeguards.

*Id.* at 273, 93 S.Ct. at 2540. It is abundantly clear that the Government's interest in controlling the flow of drugs or collecting duty on otherwise importable goods is of at least equal magnitude to the interest in deterring unlawful entry by aliens. Against these interests we must balance those constitutional protections invoked by plaintiffs.

## III. VALIDITY OF BORDER SEARCHES AND SEIZURES.

■ The validity of the searches conducted by customs agents in these cases clearly did not contravene the fourth amendment. Both vehicles were observed crossing the border at either a closed border station or at a point where no border station existed. The existence of probable cause to search the persons or the vehicles themselves, therefore, is not subject to serious dispute. Plaintiff Rich's automobile was searched at a border station, as was Lee's van. These searches are well within the language of Carroll v. United States, *supra.* In these circumstances, the search of Lee's van, which occurred away from the bor-

der, must be deemed a "functional equivalent" to a border search and, therefore, clearly sustainable under *Carroll. See also* Almeida-Sanchez v. United States, 413 U.S. at 272–274, 93 S.Ct. 2535.

■ Probable cause to seize both vehicles for the purpose of taking them into custody is established for reasons identical to those applicable to the searches conducted. *Cf.* Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L. Ed.2d 730 (1967). We conclude that whether it was proper to retain the two vehicles beyond the period required to search them is a question properly disposed of under the Due Process Clause of the fifth amendment.[2]

## IV. DUE PROCESS CLAIMS.

Plaintiffs' fifth amendment claims fall generally into two categories: (1) that the seizure and retention of the vehicles or the holding of a deposit on them without a sufficient opportunity to be heard in opposition thereto violated their right not to be deprived, even temporarily, of their property without due process of law; and (2) the procedures established for mitigation and remission of penalties as well as for forfeiture are likewise deficient.

### A. *Rich's Due Process Claim.*

■ An examination of Rich's claim under the Due Process Clause must necessarily begin with an inspection of the statutes under which the Government claims authority to seize, hold, or release a vehicle after payment of a deposit. These include 19 U.S.C. § 1459, which imposes upon the person in charge of any vehicle arriving in the United States from any contiguous country the duty to report his arrival to the customs official at the port of entry or the near-

---

**2.** We note that the Court in *Cooper* placed some emphasis upon the fact that the seizure of the vehicle was justified under a California statute by the need to seize the vehicle as evidence in the criminal action which ensued. There is no plausible argu-

ment, and, indeed, the Government makes no suggestion, that the seizures of the vehicles in this case were for the purpose of preserving them as evidence in any proceeding, civil or criminal.

est customs station to that port of entry. Under 19 U.S.C. § 1460,

> [T]he person in charge of any vehicle who fails to report arrival in the United States as required by section 1459 . . . shall be subject to a penalty of $100 for each offense. If any merchandise is imported . . . in any vessel or vehicle . . . from a contiguous country, which vessel, vehicle, or merchandise is not so reported to the proper customs officers . . .; such merchandise and the vessel or vehicle, if any, in which it was imported . . . shall be subject to forfeiture; and . . . the person in charge of such vehicle . . . shall, in addition to any other penalty, be liable to a penalty equal to the value of the merchandise which was not reported . . . . If any . . . vehicle not so reported carries any passenger . . . the person in charge of the vehicle shall, in addition to any other penalty, be liable to a penalty of $500 for each passenger so carried, discharged, or landed.

Under § 1460 the customs officials had no statutory authority to retain Rich's automobile since the sole allegation against Rich was a simple violation of § 1459. The subordinate clause "If any merchandise is imported" conditions the remainder of that particular sentence; in other words, if no merchandise subject to duty is imported, there can be no seizure or forfeiture under § 1460. This reading is enforced by the subsequent sentence of the section, which limits additional penalties to the value of the "merchandise which was not reported." Indeed, the Government stipulates this

to be the correct reading of § 1460, arguing that the vehicle was seized and held pursuant to 19 U.S.C. § 1594.

■ Under 19 U.S.C. § 1594, a vehicle whose driver "has become subject to a penalty for violation of the customs-revenue laws of the United States . . . shall be held for the payment of such penalty and may be seized and proceeded against summarily by libel to recover the same . . . ."[3] While the legislative history of § 1594 is silent on the question whether Congress intended a simple failure to report under § 1459 to expose a vehicle to retention to secure the Government's interest in collecting whatever penalty might be assessed, the broad language of § 1594 would appear to permit such a reading.[4] Assuming such a reading to be correct, we shall turn to a finer reading of the phrase "has become subject to a penalty" after a brief discussion of the fifth amendment implications of this type of seizure.[5]

More than a century ago the Supreme Court wrote that "Parties whose rights are to be affected are entitled to be heard . . . ." Baldwin v. Hale, 68 U.S. 223, 233, 17 L.Ed. 531 (1863). In recent years, the Court has, proceeding from this premise, developed a body of constitutional doctrine deeply relevant. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), held that notice and a prior hearing were mandated before a statute authorizing the prejudgment garnishment of wages could pass muster. The Court's opinion noted that wages were a "specialized" form of property without elaborating on the precise effect of such

---

3. This section exempts vehicles used as common carriers in the transaction of business unless the driver of such a vehicle "was at the time of the alleged illegal act a consenting party or privy thereto."

4. This issue has apparently not been the subject of litigation. While simple failure to report at a border station under the circumstances is an act that Congress sought to penalize, the reporting procedure is essentially a mechanism which allows the Government to safeguard its important interests in controlling

the entry of foreign nationals and dangerous substances, as well as its interests in collecting duty on dutiable merchandise.

5. We reemphasize that the seizure of Rich's automobile is justified, under § 1594, only to secure the interest of the Government in collecting whatever penalty was due to the Government under § 1460. Rich's automobile is not subject to forfeiture as a penalty in and of itself, as is the case of plaintiff **Lee's van**, discussed *infra*.

a categorization. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Court, holding that notice and a prior hearing were required before welfare benefits could be terminated, likened welfare benefits to the wages in *Sniadach, id.* at 264, 89 S.Ct. 1820. In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the Court invalidated a portion of the Georgia Motor Vehicle Responsibility Act that permitted the summary suspension of the motor vehicle registration and driver's license of an uninsured motorist involved in an accident unless that motorist posted security to cover the amount of damages claimed by any aggrieved party. *Id.* at 536, 91 S.Ct. 1586. The Court commented, as it had in *Sniadach* and *Goldberg,* upon the nature of the property that had been subjected to summary seizure or dispossession:

> Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood . . . . [Therefore] the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Id.* at 539, 91 S.Ct. at 1589.

In considering the type of hearing required on those particular facts, the Court stated that "procedural due process will be satisfied by an inquiry limited to the determination whether there is

a reasonable possibility of judgment *in the amounts claimed* being rendered against the licensee." *Id.* at 540, 91 S. Ct. at 1590 (emphasis added). The special emphasis that we place on the phrase "in the amounts claimed" stems from our reading *Bell* to require a hearing both to determine the probability of a judgment's being had *and* that the amount of the bond, if required at all, be reasonable relative to whatever judgment might finally become due.[6]

We need not reach the question whether an automobile itself is to be treated like the license and registration in *Bell,* since Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), have made it clear that any person's right to enjoy any of his personal property may not be deprived without procedural due process and that it is immaterial that the deprivation by retention may be temporary and nonfinal.

We hold, then, that a retention after search under 19 U.S.C. § 1594 based solely on a violation of 19 U.S.C. § 1459 cannot be effected unless the person in charge[7] of the vehicle has been given the opportunity to be heard on the question whether § 1459 was in fact violated *and* the appropriate customs official has made an initial assessment of a fine un-

---

6. Toward the end of his opinion for the Court, Mr. Justice Brennan appeared to summarize the holding of the Court by stating that Georgia "must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident." 402 U.S. at 542, 91 S.Ct. at 1591. This language, as well as that quoted in the text from 402 U.S. at 540, 91 S.Ct. 1586 is described as the "holding," yet the phrase "in the amounts claimed" is absent from the holding as set out in 402 U.S. at 542, 91 S.Ct. 1586. This discrepancy, if it may be called such, would perhaps be a ground for reading *Bell* more narrowly by, in essence, disregarding the earlier language referring to "the amounts claimed."

7. This case does not present us with a situation wherein the owner of the instrumentali-

ty involved in the offense is other than the individual in charge of it. Although our decision is necessarily confined to the problems generated by the facts before us, we think that an owner, not in charge of the property involved, is probably entitled to some constitutionally afforded protection before the seizure and forfeiture of his property. This very question is *sub judice* in Pearson Yacht Leasing Co. v. Massa, 363 F.Supp. 1337 (D. P.R., 1973) (three-judge court), prob. juris. noted sub nom. Calero-Toledo v. Pearson Yacht Leasing Co., 414 U.S. 816, 94 S.Ct. 69, 38 L.Ed.2d 48 (1973). The statutory scheme under attack in *Pearson* is patterned after the federal statutes invoked here against plaintiff Lee—providing for the forfeiture of vehicles carrying "controlled substances" across the border.

der 19 U.S.C. § 1460. This holding, we believe, places a permissible construction on § 1594 which saves that provision's constitutionality as applied to these limited facts.[8] We hold additionally that the assessment of a fine under § 1460, since it will represent only the maximum *potential* liability, must then be subjected to consideration after the filing of a petition for remission and mitigation under 19 U.S.C. § 1618. Only by requiring such a procedure can a realistic determination of liability be made, and we read *Bell* to require precisely that sort of determination.

Assessing this holding as applied to the facts in Rich's case, it is clear that we do little violence to the procedures presently employed under defendant Thornton's auspices. In his amended stipulation, Thornton states that

> Frequently, in cases not involving serious offenses or very valuable property, a petition for remission or mitigation is made on the spot by the person, and tentatively decided by the customs officer at that time.

This procedure was allegedly followed in Rich's case, since Rich filed his petition immediately, but it appears from the record that Inspector Clark did not actually exercise the power of remittance under § 1618; rather, it appears that he merely implemented the provisions of 19 U.S.C. § 1614 which permit a vehicle to be released if a deposit equal to the value of the vehicle as assessed under 19 U.S.C. § 1606 has been paid. That Inspector Clark could have exercised the remittance power under the circumstances is evident from the stipulation that Clark had previously been delegated authority "to entertain certain customs mitigation and remission cases, such as Rich's." Our holding simply requires the designated customs officer to exercise the § 1618 power of remittance or mitigation in order that a realistic penalty may be assessed at the outset. Once this power is exercised, the interests of the Government in ensuring the collection of the penalty imposed are satisfied when a deposit equal to that of the assessed penalty, rather than the value of the vehicle, if greater, has been made.[9]

▮▮▮▮ To summarize with respect to the seizure and holding of plaintiff Rich's vehicle, we hold that, before a vehicle can be retained by the Government after initial border search and seizure for purposes of going to the appropriate border station, where only a simple violation of 19 U.S.C. § 1459 is charged,

---

8. The Government argues that the summary seizure of personalty where federal action is involved has long been sanctioned by the Supreme Court. The Government directs our attention particularly to the cases which have sustained the constitutionality of statutes authorizing the summary seizure of assets where collection of the internal revenue is involved. *E. g.*, Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). Two distinctive features of these cases stand out, however; first, the Government in all cases has made a preliminary determination that the tax is due and the amount of that tax; and, second, there has been present a threat that assets could be wasted or removed from the country. Although we need not reach the question here, it would seem that the seizure of an automobile as security to protect the Government's interest in collecting a $50 fine, even with a requisite hearing, might well have been beyond the intent of Congress in enacting § 1594.

9. We do not, and would not, read congressional intent in enacting § 1614 as requiring a party to post security in excess of the maximum fine that could be collected by the Government under all relevant statutes. Section 1614 is obviously designed to deal with cases in which forfeiture of a vehicle as a penalty in addition to other penalties is authorized, which is not the case where a simple violation of § 1459 is charged. By construing § 1594 as requiring the Government to exercise immediately its powers of remittance and mitigation under § 1618 in an adequate hearing, one accused of a violation of § 1459, by depositing cash or a bond to cover the maximum imposable fine (whether or not this fine is in fact reduced under § 1618 initially or subsequently), will secure release of his vehicle not under § 1614 but as a result of his fine having been tentatively "paid." We find the power of the Secretary of the Treasury and his delegatees to require such a deposit under 19 U.S.C. § 1623 rather than under § 1614.

one so charged is entitled to a hearing before an appropriate customs official [10] at which time the following must occur: (1) the accused may present his version of the facts surrounding his alleged violation of § 1459 after receiving notice orally or in writing of that allegation; (2) he shall have the privilege of confronting and questioning any witnesses against him; (3) the official is required to determine whether there is reasonable ground to believe that § 1459 was violated by the accused; (4) the accused must be advised of and allowed to submit a petition for remittance or mitigation under § 1618; (5) the official is required to exercise the discretion granted under § 1618 to determine the maximum fine that should, in the circumstances, be imposed; (6) the accused is afforded the opportunity to post security equal to the maximum penalty as determined in (5) above, which, if posted, will secure the release of the vehicle; and (7) the hearing officer shall summarize the substance of the hearing and his conclusions on the appropriate forms.[11] Any or all of these rights may be waived by the accused after a full explanation of them has been given and the accused has executed a written waiver of them.

Plaintiff Rich next asserts that the procedures under which a final determination of the penalty to be imposed is reached are violative of the Due Process Clause. The process that we have just mandated for Rich and those similarly situated reduces this particular claim to these contentions: (1) the final determination as to whether he violated § 1459 was reached without his having adequate opportunity to contest the factual findings made by the Secretary of the Treasury or his delegatees; and (2) the procedures available to appeal that decision are either inadequate or deprive him of the "equal protection of the law."

■■■■ As a preliminary matter, we note that the *only* "factual" determination relevant to Rich's case is whether he, in crossing the border, failed "immediately [to] report his arrival" under § 1459. It appears to us that the initial hearing we now require in and of itself affords alleged violators of § 1459 due process and that no other process need be afforded to protect their interests.[12] Rich's vehicle would be subject to libel or condemnation only after the District Director had reached a final determination under § 1618 and Rich had refused to pay the penalty so assessed. Rich's bility to contest that decision under 19 U.S.C. §§ 1607 & 1608,[13] particularly the requirement of posting a $250 penal bond under the latter section, is adequate both to protect his rights and to protect the Government from the prosecution of frivolous claims. United States v. Kras, 409 U.S. 434, 93 S.Ct.

---

10. An "appropriate" customs official would be an official possessing the delegated authority to act pursuant to 19 U.S.C. § 1618 and one who, until the time of the hearing, has not been directly involved in the apprehension or accusation of the accused. *Cf.* Morrissey v. Brewer, 408 U.S. 471, 485–487, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1973). The accused, of course, after it has been explained to him that he has a right to an impartial hearing before an official other than one by whom he has been accused, may waive such a right and consent in writing to a hearing before the same official who has accused him.

11. The forms presently used by the Bureau of Customs and submitted to this court would seem to be adequate for these purposes. Customs Forms 4609 & 5955 (3/70).

12. We are unable to determine on the present record whether Rich's hearing before Inspector Clark was so substantially different from the hearing we have now required that Rich should have a remedy in damages under the relevant statutes. We leave this decision to another forum, *see* part VI *infra*.

13. We disagree with Rich's contention, as does the Government, that the remedy afforded by § 1608 is not available to contest the imposition of a fine where no forfeiture of property as a penalty is involved. We read § 1595a as not allowing the sale of a vehicle until such time as the owner has exhausted all administrative appeals and has failed either to pay the fine or pursue his remedy under § 1608.

631, 34 L.Ed.2d 626 (1973), is dispositive of Rich's argument on this point.[14]

### B. *Lee's Due Process Claim.*

Plainly, plaintiff Lee's position differs materially from that of Rich in that Lee's vehicle and the contents therein became immediately subject to forfeiture *as a penalty* in addition to any other penalty under 19 U.S.C. § 1460; Lee was charged with violating 19 U.S.C. § 1595a, relating to the importation of any article contrary to law, and 21 U.S.C. § 881, relating to the forfeiture of vehicles used to import "controlled substances." At the same time, Lee's possessory interest insofar as the vehicle itself is concerned is certainly no less than that of Rich. The reasons for requiring a pre-retention hearing in Rich's case are equally applicable to Lee, with the exception that the immediate exercise of discretion under § 1618 cannot be required of customs officials—at least at the initial hearing. This is so because the factual situation with which customs officials are presented where the vehicle is subject to forfeiture as a penalty includes the need to refer some cases to the United States Attorney for further investigation and possible criminal prosecution.

Where charges are made that subject vehicles to forfeiture as a penalty and the customs officials choose *not* to exercise their discretion of remittance under § 1618 at the initial hearing at the border station, we hold that an additional hearing must be held within a reasonable period of time after the seizure. While a "reasonable period" will depend on the facts of each seizure, it would seem that three regular working days would give customs officials sufficient time to apply their expertise to a given situation. At this hearing, the one whose property has been seized must be allowed to present his version of the facts to the customs official who will, at the termination of the hearing, exercise the power of remittance under § 1608.

Having decided this, the question remains whether subsequent proceedings afford process sufficient to satisfy the fifth amendment. We find that these procedures, considered previously with respect to plaintiff Rich, do comport with the Due Process Clause. Lee argues that "forfeiture" is essentially a "criminal" proceeding for purposes of the fifth amendment, directing our attention particularly to United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). That case held that the fifth amendment's privilege against self-incrimination could be invoked in forfeiture proceedings because, taken as a whole, forfeiture proceedings "are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." *Id.* at 721–722, 91 S.Ct. at 1045. We fully subscribe to this principle, but in this case plaintiff Lee has not, unlike the plaintiff in *United States Coin,* asserted that any conduct for which his mitigated forfeiture was finally imposed was in any way constitutionally protected.[15] We perceive

14. Rich asserts that the requirement that he post a bond in the amount of $250 violates the "equal protection" aspects of the fifth amendment, Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), because, were the assessed value of his seized property in excess of $2,500, such a bond would not be required under 19 U.S.C. § 1610. Under our decision today, Rich and others similarly situated may have their vehicles held as surety only upon their failure to post a cash deposit or bond in a sum equal to the maximum penalty they might incur under § 1460. In this posture, and because by seeking judicial condemnation proceedings Rich assumes the additional obligation to pay the costs of such proceedings if condemnation is ordered under § 1608, we find the requirement of posting a bond to be a reasonable and rational requirement to protect the interests of the Government. Rich does not assert a constitutional right to a hearing in an Article III court, and rightly so. *See* Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973).

15. We note the Court's reference and tacit approval of the provisions of 19 U.S.C. § 1618, especially the Court's statement that "It is not to be presumed that the Secretary

no distinction between forfeiture under 19 U.S.C. § 1595a or 21 U.S.C. § 881 and forfeiture under 19 U.S.C. § 1497. Forfeiture proceedings under that latter statute were reviewed and sanctioned recently in One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). Lee argues that *One Lot* is distinguishable in that the proceeding there was against imported contraband rather than, as here, against the vehicle that was an "instrumentality" used to import the contraband illegally. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), does not require the result that Lee would urge upon us. In that case the Court held that evidence obtained in violation of the fourth amendment may not be used to sustain a forfeiture. Lee's complaint does not present us with such a claim.

## V. SIXTH AMENDMENT CLAIMS.

▬ Plaintiffs' sixth amendment claims are based upon their contention that the forfeiture provisions adopted by Congress as an alternative to criminal prosecution must be denominated "criminal" for purposes of that amendment. To sustain this claim, which has some superficial appeal, would require us, however, to cast serious doubt on a long line of cases decided by the Supreme Court that have sanctioned such governmental action where the protections of the sixth amendment were not afforded. Helvering v. Mitchell, 303 U.S. 391, 400, 58 S.Ct. 630, 82 L.Ed. 917 (1938), and cases cited therein. The opinion of Mr. Justice Brandeis for the Court took cognizance, as we do, of the "comparative severity" of the sanctions which may be imposed in forfeiture proceedings, *id.*; we conclude that the Due Process Clause

of the fifth amendment provides adequate protection in the forfeiture context.

## VI. RELIEF.

Having decided the constitutional claims asserted by plaintiffs, we turn to consideration of what relief they might be entitled to in this court. Plaintiffs request that the Commissioner of Customs be required to remit the respective fines of $25 and $100 which were assessed and collected from Rich and Lee. The opportunity for plaintiffs to pursue their remedies under 19 U.S.C. § 1618 having long since passed, the question becomes whether this court's equitable power to fashion appropriate relief should be used, and, if so, in what fashion. The scope of review of such a determination by the Commissioner in a § 1618 proceeding is, of course, greatly limited because of the wide discretion granted to the Secretary of the Treasury and his delegatees by Congress to make such determinations. We consider our scope of review to be equally narrow, but rely on the Supreme Court's statement in United States v. United States Coin & Currency, 401 U.S. at 721, 91 S.Ct. at 1045 that "the courts have intervened when the innocent petitioner's protests have gone unheeded."

Considering the totality of circumstances present with respect to both Rich and Lee, we conclude that their protests did not go "unheeded" to the extent of our setting aside the fines imposed. We therefore decline to order remission of those fines. With respect to the damages sought by the plaintiffs, we do not reach the merits but remit the plaintiffs to the district court. Melendez v. Shultz, 356 F.Supp. at 1211.[16]

Judgment in accordance with this opinion.

---

[of the Treasury] will not conscientiously fulfill this trust . . . ." 401 U.S. at 721, 91 S.Ct. at 1045.

**16.** At least one court has recently held that a plaintiff in somewhat similar circum-

stances is barred by the doctrine of sovereign immunity from recovery. *See* States Marine Lines, Inc. v. Shultz, 359 F.Supp. 512 (D.S.C.1973). We express no view on this question.