James P. LEE, Jr.

v.

William L. THORNTON, District Director of United States Customs for the District of Vermont, et al.

Ronald RICH

v.

William L. THORNTON, District Director of the United States Customs for the District of Vermont, et al.

Civ. A. Nos. 6451, 6762.

United States District Court, D. Vermont.

July 25, 1975.

SSI benefits would be barred by the doctrine of sovereign immunity.

J. Morris Clark and James R. Flett, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiffs.

William B. Gray, Asst. U. S. Atty., Rutland, Vt., and Rufus E. Stetson, Jr., Regional Counsel, Bureau of Customs, Boston, Mass., for defendants.

COFFRIN, District Judge.

This case involves certain seizure, penalty, and forfeiture provisions of the customs laws alleged to be unconstitutional for a variety of reasons. It was heard earlier by a court of three judges which decided the constitutional issues adversely to the plaintiff. *See Lee v. Thornton,* 370 F.Supp. 312 (D.Vt.1974). The plaintiffs appealed to the Supreme Court which held that it lacked jurisdiction to entertain the appeal because the three-judge court had been convened improperly since the Tucker Act, 28 U.S.C. § 1346(a)(2), the only jurisdictional ground relied upon, empowered the court below to give an award of damages and did not authorize injunctive or declaratory relief. Accordingly, the judgment of the three-judge court was vacated and the case remanded for consideration of plaintiffs' other asserted bases for jurisdiction. *Lee v. Thornton,* No. 73–7006, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975). After consideration of other jurisdictional grounds and after inquiry into the continuing need for a three-judge court, the three-judge court was dissolved and we received the case for ultimate disposition.

## I. FACTS

The facts were detailed in the earlier district court opinion, however, for ease of reference we summarize them again here.

Plaintiff Lee crossed the Canadian border into Vermont in his Volkswagen van carrying three other persons during the early morning hours of October 5, 1971. The entry station at Alburg Springs, Vermont, was closed during those hours, but signs directed travelers

to the customs station in Swanton. When the van did not proceed to Swanton, Agent Peck of the Border Patrol who had observed the crossing followed the vehicle to East Alburg. When the van stopped, Peck came forward, identified himself, and interviewed the occupants. He then directed them to proceed to Swanton Immigration Headquarters where the van was searched. The search produced one gram of marijuana seed and some foreign merchandise for which there was no proof of purchase. Immigration authorities then told Lee and the others that they could go, but officials continued to hold the van and personal property.

The day he was released, Lee contacted defendant Thornton, District Director of the Bureau of Customs, concerning the van. He was told that he could secure its release by posting a cash deposit of $1,800.00 and that he could also file a petition for remission and mitigation of the fines and forfeitures imposed. Two weeks later on October 19, 1971, Thornton notified Lee by letter that he had violated 19 U.S.C. §§ 1459, 1595a and 21 U.S.C. § 881, and that by reason of these violations he had incurred a personal penalty of $1,845.00 and his vehicle and other merchandise had become subject to forfeiture. In the letter Thornton also informed Lee of his right to file a petition, pursuant to 19 U.S.C. § 1618, for remission or mitigation of the personal fine and the forfeiture. Lee filed a petition on October 27, 1971, and on November 1, 1971, Thornton wrote another letter to plaintiff informing him that the penalty had been remitted in full and the forfeiture was mitigated to $100.00. Lee decided to pay the $100.00 to secure the release of his van. He did not formally contest the penalty imposed by filing a claim to the van which would have forced the Government to institute proceedings to condemn the property. Lee claimed he was unable to post a surety bond in the amount of $250.00 which is a condition precedent to filing a claim where the property subject to forfeiture is appraised at less than $2,500.00.

Plaintiff Rich, his wife, and two minor children crossed the border near Alburg, Vermont, on October 27, 1971. Border Patrol agents stopped the car and accused Rich of failing to report his arrival in the United States. They told him to proceed to the station at Highgate Springs where Rich's car was subsequently seized. After being informed that he was liable to a penalty of $1,600.00 for the border violation of which he was accused, Rich immediately filed a petition for remission or mitigation. Inspector Clark told him that he could obtain the release of his automobile by paying $50.00 toward the eventual penalty, and Rich did so. In January, 1972, Thornton notified Rich by letter that the penalty had been mitigated to $25.00 and that he would receive the amount of his overpayment in due course.

## II. STATUTORY SCHEME

This case involves three statutes under which the Bureau of Customs seeks forfeitures and penalties.

1. 19 U.S.C. § 1459 requires that the person in charge of a vehicle arriving in the United States report his arrival to the customs officer at the nearest point of entry immediately upon entering. Section 1460 provides two kinds of penalties for violation of § 1459: a penalty of up to $100.00 for the driver plus $500.00 for each passenger in the vehicle; and if the vehicle is found to have brought in merchandise, a penalty equal to the value of such goods may be imposed. Section 1460 does not itself implicate the vehicle, but § 1594 provides that a vehicle under the charge of a person who has become subject to a penalty shall be held for the payment of such penalty, and the vehicle may be proceeded against summarily by libel.

2. 19 U.S.C. § 1595a provides that any vehicle used to import any article into the United States contrary to law shall be seized and forfeited, and it also

provides for a penalty equal to the value of articles so introduced. Thus an automobile which brings in a camera or radio illegally can be forfeited as can the camera or radio itself.

3. 21 U.S.C. § 881(a)(4) provides that all vehicles used to import controlled substances shall be subject to forfeiture. The practice in the St. Albans Customs District has been to bring all cases involving importation of a controlled substance under the broader provisions of § 1595a as well as under § 881.

Once a vehicle has been seized pursuant to any of the preceding statutes, the officer or agent making the seizure must report it to the appropriate customs officer for the district in which the violation occurred. 19 U.S.C. § 1602. In addition, written notice of any penalty or liability to forfeiture as well as the right to petition for mitigation or remission thereof must be given to each interested party. 19 C.F.R. § 162.31(a). Each interested party then has 60 days in which to petition for mitigation or remission of such fine, penalty, or forfeiture, including in such petition the facts and circumstances upon which he relies to justify the mitigation or remission. 19 C.F.R. §§ 171.12, 171.11(c)(3).

In the case at hand both Lee and Rich filed petitions for mitigation and remission. The Secretary of the Treasury is authorized to remit or mitigate on such terms as he deems reasonable, and just, or order the discontinuance of any prosecution, "if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture . . . ." 19 U.S.C. § 1618. The district director of customs is likewise authorized to mitigate and remit fines, penalties, and forfeitures when the total value thereof do not exceed $25,000, and he can cancel the claim when it is "definitely determined that the act or omission forming the basis of a penalty or forfeiture claim did not in fact occur . . . ." 19 C.F.R. §§ 171.21, 171.31.

After seizure the property is appraised. 19 U.S.C. § 1606; 19 C.F.R. § 162.43. The appraised value is important because it determines the manner in which the Government must proceed in order to forfeit or condemn the property. If the appraised value is greater than $2,500.00, the appropriate customs officer must turn matters over to the United States attorney who will institute condemnation proceedings. 19 U.S.C. § 1610. In this case, however, officials appraised the property seized from both Lee and Rich at less than $2,500.00, which meant that the Government could proceed to a summary disposition of the property by publishing notice of the seizure and directing anyone interested in the property to file a claim with the appropriate customs officer stating his interest in the property within twenty days of the notice. 19 U.S.C. § 1607; 19 C.F.R. § 162.45. If no interested party files a claim, officials can declare the property forfeited. 19 U.S.C. § 1609; 19 C.F.R. § 162.46. On the other hand, if a claim is filed, the Government must institute condemnation proceedings in the same manner as though the property were worth more than $2,500.00. But in order to file a claim one must post a bond in the penal sum of $250.00 with sureties as security for the costs and expenses of obtaining condemnation of the property should the Government prevail. 19 U.S.C. § 1608; 19 C.F.R. § 162.47. Neither Lee nor Rich filed a claim. As stated customs officials mitigated the penalty or forfeiture to $25.00 in Rich's case and $100.00 in Lee's. Since both Lee and Rich paid the mitigated penalty, they did not have an opportunity to present their cause in condemnation proceedings.

Although forfeiture proceedings were not necessary in this instance because the goods were not worth more than $2,500.00, formal proceedings might

have been required had either plaintiff elected to file a claim. When legal proceedings are necessary, the appropriate customs officer is required to report the seizure or violation to the United States attorney of the district in which the act occurred, together with the facts and circumstances and a citation of the statutes or statutes believed to have been violated. 19 U.S.C. § 1603. Upon receiving such a report, the United States attorney "immediately" shall inquire into the facts and applicable law, and if it appears probable that proceedings in a United States district court are necessary for the recovery of any fine, penalty, or forfeiture by reason of such violation, the United States attorney shall "forthwith" cause the necessary proceedings to be commenced and prosecuted "without delay," unless he decides such proceedings probably cannot be sustained in which case he is to report the facts to the Secretary of the Treasury for his direction. 19 U.S.C. § 1604.

### III. PLAINTIFFS' CLAIMS

Plaintiffs do not claim that the defendant or any of the individual customs officers failed to comply with the statutes or regulations applicable to their respective cases. Likewise there is no claim of impermissible or egregious delay on the part of any officials in taking action required by the statutes or regulations such as was found in *Sarkisian v. United States*, 472 F.2d 468 (10th Cir.), *cert. denied*, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973), and *States Marine Lines v. Shultz*, 498 F.2d 1146 (4th Cir. 1974), and which gave rise to a violation of fifth amendment rights in that an individual was deprived of his property without due process of law. *See also United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1973).

Plaintiffs do claim that the seizure and retention of their property was unconstitutional in several respects. They claim that they should have been afforded a hearing prior to seizure of their property, or at the least a hearing shortly thereafter, to determine the probable validity of the Government's claim that they had become subject to penalties and their property had become subject to forfeiture, and also to set the amount of bond to secure the return of the property pending formal proceedings. Plaintiffs also contend that before they could be penalized or their property forfeited they were entitled to have a trial before a court established under article III of the Constitution where, pursuant to the sixth amendment, they would receive notice of the charges against them and would have the right to retain counsel, to use compulsory process, and to confront adverse witnesses, and where the Government would have to prove liability beyond a reasonable doubt and would have to respect their privilege against self-incrimination. In addition, plaintiffs claim that the Government took their property without paying just compensation in violation of the fifth amendment. Finally, they claim that the surety bond requirement which distinguishes the procedures used to forfeit property worth less than $2,500.00 from the procedures used where property is worth more than that amount violates their right to equal protection of the law as guaranteed by the fifth amendment.

### IV. SUBJECT MATTER JURISDICTION

Plaintiffs originally sought restoration of the penalties which they paid, consequential damages which they incurred by reason of the seizure, and a declaratory judgment that the statutory provisions for seizure and forfeiture are unconstitutional together with an injunction against their further enforcement. Rich and Lee have since withdrawn their requests for consequential damages.

We have jurisdiction as a single-judge court under 28 U.S.C. § 1346(a)(2) to adjudicate civil claims against the United States for money damages occasioned by illegal seizures

and forfeitures. *Simons v. United States*, 497 F.2d 1046, 1049 (9th Cir. 1974); *Pasha v. United States*, 484 F.2d 630 (7th Cir. 1973); *Jaekel v. United States*, 304 F.Supp. 993, 997 (S.D.N.Y. 1969). Although plaintiffs have withdrawn their claim for consequential damages, § 1346(a)(2) still gives us jurisdiction to hear plaintiffs' claim for remission of the amounts paid. We also have jurisdiction under 28 U.S.C. § 1361 to determine the scope of any constitutional duty which defendant Thornton may owe to plaintiffs. *Frost v. Weinberger*, 515 F.2d 57 (2d Cir. 1975); *see also Davis v. Weinberger*, Civil No. 6667 (D.Vt. Nov. 19, 1974). Jurisdiction under § 1361 requires that plaintiffs have no other adequate remedy. *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972), *cert. denied*, 411 U.S. 918, 93 S. Ct. 1555, 36 L.Ed.2d 310 (1973). The Government contends that plaintiffs had an adequate remedy in the available condemnation proceedings and that they cannot now avail themselves of another remedy having elected to forego one that was provided by statute. Plaintiffs claim, however, that condemnation proceedings are not adequate and in any event come too late, and we in turn believe it is pointless to require plaintiffs to exhaust remedies which they claim are both inadequate and untimely. *Gibson v. Berryhill*, 411 U.S. 564, 574–575, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Finnerty v. Cowen*, 508 F.2d 979, 982–983 (2d Cir. 1974). Since we assume jurisdiction under § 1361 as well as under § 1346(a)(2), we may issue an order to compel defendant Thornton to perform any duty to plaintiffs which

we may find exists. It follows that we also have jurisdiction to grant declaratory relief as well. *Workman v. Mitchell*, 502 F.2d 1201, 1206–1207 (9th Cir. 1974).

Having determined that we have jurisdiction under § 1346(a)(2) and § 1361, we do not express any opinion concerning jurisdiction under 28 U.S.C. §§ 1337, 1355, 1356.

## V. THREE-JUDGE COURT

■ In its original posture this case was heard by a court of three judges. Upon remand from the Supreme Court, however, the panel determined that a three-judge court was no longer necessary. Although only a three-judge court may grant an injunction restraining the enforcement of an Act of Congress for repugnance to the Constitution, 28 U.S.C. § 2282, a three-judge court is no longer necessary in this instance because the requests for injunctions have long since become moot even though the parties still retain sufficient interests and injury to justify declaratory relief. *See Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 121–122, 94 S.Ct. 1694, 40 L. Ed.2d 1 (1974). Where declaratory relief alone is indicated, a three-judge court is not needed even though the complaint requests an injunction as well. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). And of course there is no reason to convene a three-judge court when the complaint seeks only damages against the United States. *Lee v. Thornton*, No. 73–7006, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975).[1]

1. Subsequent to the decision of the three-judge court in *Lee v. Thornton*, 370 F.Supp. 312 (D.Vt.1974), the Supreme Court decided *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), which clearly rules that a statutory claim should be decided before resolution of a constitutional question, and if dispositive, the constitutional issue need not be reached. *Hagans* holds that a three-judge court need not be convened unless it becomes necessary to decide the constitutional question due to the rejection of

the statutory claim by the single judge. The decision of the three-judge court in the instant case was based on a statutory construction which "saved" the constitutionality of the statutes in question, however, the decision of the three-judge court on statutory grounds did not completely resolve the plaintiffs' constitutional claims, and for that reason it is reasonable to assume that apart from jurisdictional considerations, the case was properly before the three judges. However, we need not decide whether this procedure was proper since

## VI. MERITS

After determining that the Rich and Lee vehicles were properly searched incident to a border crossing, the three-judge court held the statutes permitting such seizures to be constitutional provided certain procedures which it felt were required by due process were followed.[2]

### A. Pre-seizure or Pre-retention Notice and Hearing

■ At the time the three-judge court made its determination that due process required that the plaintiffs should have been notified of the charges against them and should have been given a hearing prior to any seizure or retention of their vehicles,[3] the Supreme Court had not yet decided *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In *Calero-Toledo* Puerto Rican officials seized a yacht which the plaintiff had leased to a third party. The lessee had been discovered using marijuana on board the yacht which under the Controlled Substance Act of Puerto Rico rendered the yacht subject to forfeiture. The Court held that such seizures fall within the "extraordinary situations" exception to the *Fuentes* rule because they serve important government interests. Prior notice and hearing would often render seizure impossible because the items could be removed from the jurisdiction or hidden if advance warning were given. The Court also noted that government officials rather than interested private parties determine whether seizure is appropriate, making the remedy less susceptible to abuse. *Calero-Toledo v. Pearson Yacht Leasing Co., supra* at 679, 94 S.

as the matter presently stands disposition may be made by a single judge.

2. As to Rich, who was accused of only a single violation of 19 U.S.C. § 1459 (failure to report to a border station), the three-judge court held that before his vehicle could be retained he was entitled to a hearing before an appropriate customs official. The court held that at the hearing due process required the following:

(1) the accused may present his version of the facts surrounding his alleged violation of § 1459 after receiving notice orally or in writing of that allegation; (2) he shall have the privilege of confronting and questioning any witnesses against him; (3) the official is required to determine whether there is reasonable ground to believe that § 1459 was violated by the accused; (4) the accused must be advised of and allowed to submit a petition for remittance or mitigation under § 1618; (5) the official is required to exercise the discretion granted under § 1618 to determine the maximum fine that should, in the circumstances, be imposed; (6) the accused is afforded the opportunity to post security equal to the maximum penalty as determined in (5) above, which, if posted, will secure the release of the vehicle; and (7) the hearing officer shall summarize the substance of the hearing and his conclusions on the appropriate forms.

*Lee v. Thornton*, 370 F.Supp. at 322.

In the case of Lee who was accused of a violation of 19 U.S.C. § 1595a (importation of an article contrary to law) and 21 U.S.C. § 881 (importation of a controlled substance), and whose vehicle had become subject to forfeiture under 19 U.S.C. §§ 1460, 1594, the three-judge court held that he was entitled to the same procedural safeguards as Rich with the exception that customs officials could not be required to exercise immediately discretion under 19 U.S.C. § 1618 because in certain instances the case might have to be referred to the United States attorney for further investigation and possible criminal prosecution. For that reason the court held that Lee's vehicle could be retained for a reasonable period until the latter determination could be made. Such a reasonable period was defined as three regular working days during which time, if it had not already taken place at the time of the seizure, a hearing would have to be held at which the party whose property had been seized could present his version of the facts to the customs official who would be required to consider mitigation or remission as outlined in § 1618 at the conclusion of the hearing. *Lee v. Thornton*, 370 F.Supp. at 323.

3. We consider that a post-seizure or post-retention hearing promptly held could serve as a substitute for the pre-seizure or pre-retention hearing required by the three-judge court in those instances where the circumstances were such as to make it impossible for a hearing to be held prior to the seizure or retention.

Ct. 2080. Although *Calero-Toledo* involved the statutes of Puerto Rico and not the federal customs laws, we think the principles set forth therein are controlling here. It is a matter of common knowledge that vehicles crossing the border are subject to inspection. Once a violation of the law has been discovered, it would be unreasonable to release contraband to the offender since he could conceal or destroy it while a hearing was pending. Similarly, it would be unreasonable to release property that had become subject to forfeiture since it could be easily removed back across the border into Canada. Impartial officials made the seizures in this case to further important interests of the United States. Under the circumstances, pre-seizure and pre-retention notice and hearing are not necessary.

*Calero-Toledo* did not eliminate the need for giving notice and hearing to interested and involved parties. Indeed, due process requires the government to provide notice "reasonably calculated" to apprise an interested party of the forfeiture proceedings. *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972). *Calero-Toledo* merely held that notice and hearing could be postponed until after the seizure. The Court did not decide whether the form of post-seizure notice prescribed by the Puerto Rico statutes in *Calero-Toledo* satisfied due process requirements as it found that no challenge had been made to the district court's determination in that regard. *Calero-Toledo, supra,* 416 U.S. at 680 n. 15, 94 S.Ct. 2080.[4]

■■■■ Based on *Calero-Toledo* we have no difficulty in holding that the forfeiture statutes, 19 U.S.C. §§ 1602–

1618 pertaining to property seized for violation of the customs laws of the United States, are constitutional and provide those persons with an interest in said property with such notice and opportunity to be heard in connection therewith as is sufficient to satisfy the due process requirements of the fifth amendment to the Constitution. But though due process does not require pre-seizure or pre-retention notice and hearing, due process does require that the officials who are responsible for implementing the statutory scheme do so with reasonable dispatch and without undue delay. *Sarkisian v. United States, supra; States Marine Lines v. Shultz, supra; United States v. Thirty-Seven Photographs, supra.* The court in *Sarkisian* found sections 1602–04 to be constitutional, and the court in *States Marine* similarly found sections 1602–04, 1610 to pass muster. But though the statutes were constitutional, long unexcused delays on the part of customs officials in proceeding against property which had been seized and was then being kept in custody were held to constitute takings of plaintiffs' property without due process of law. In the case at hand, however, the applicable statutes and regulations were duly followed, and there was no unreasonable delay. Although Thornton did not formally notify Lee until fourteen days after seizure of the vehicle of Lee's potential liability for a penalty or forfeiture and his right to petition for mitigation or remission as provided by 19 C.F.R. § 162.31(a), and though we would prefer, circumstances permitting, that such notice be sent with greater dispatch in the future, we do not find a delay of fourteen days from the date of seizure to the date of

4. The Puerto Rico statute requires notice of the seizure and appraisal to be served in an "authentic manner" by the officer under whose authority the seizure was initiated on "the owner of the property seized or the person in charge thereof or any person having any known right or interested therein" within ten days following the seizure. Service is deemed sufficient upon mailing of the notice with return receipt requested. Thereafter the parties notified can challenge the confiscation within 15 days following seizure by filing a complaint in the Puerto Rican Superior Court against the officer under whose authority the seizure had been made with proceedings thereafter conducted as in an ordinary civil suit. P.R.Laws Ann. Tit. 34 § 1722; *Calero-Toledo v. Pearson Yacht Leasing Co., supra,* 416 U.S. at 665 n. 2, 94 S.Ct. 2080.

notice to be so unreasonable as to give rise to a fifth amendment due process violation.[5]

### B. Bond Requirement—Claims Procedure

Plaintiffs allege that the bond required by 19 U.S.C. § 1608 operates to deny them equal protection of the law because it is an irrational barrier which keeps them from presenting their claims in condemnation proceedings brought by the Government. Defendant Thornton argues that there is a rational basis for the requirement.

After property has been seized pursuant to the customs or drug enforcement laws, its appraised value determines whether the Government may proceed to summary forfeiture or whether it must institute formal condemnation proceedings. If the appraised value of the property is more than $2,500.00, the Government must institute condemnation proceedings as a matter of course. If the property is worth less than $2,500.00, formal proceedings are necessary only if a party files a claim to the property. In order to file a claim a party must give bond in the penal sum of $250.00 to stand for costs and expenses should the condemnation action succeed. Thus, in order even to present their legal position in court, plaintiffs would have had to post a bond, whereas an individual whose property was worth more than $2,500.00 would have received a hearing as a matter of course.

Although at first blush the bond requirement may seem unreasonable, we believe that it is a sensible and fair way to defray the cost of conducting a condemnation proceeding where the subject property is itself of modest value. We note that the bond will stand for costs only if the Government succeeds in obtaining condemnation. 19 U.S.C. § 1608. Thus if for some reason condemnation does not occur, the bond is released. If claimants did not have to file a bond, however, the expense of seeking condemnation might well exceed the value of the prize. Bad faith claims might persuade the Government to discontinue meritorious condemnation actions. Property of greater value covers the expense of condemnation if the action succeeds. Since there is a rational basis for the bond requirement, plaintiffs' challenge must fail. *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (per curiam); *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). The fact that Lee was unable to give bond and was therefore precluded from presenting his claims does not alter our analysis since the complaining parties in *Kras* and *Ortwein* were also indigent.[6]

---

5. Courts have been called upon in the past to decide whether delay in customs forfeiture proceedings rises to the level of a constitutional violation. Thus in *United States v. Thirty-Seven Photographs, supra,* the Supreme Court held that in a case involving allegedly obscene photographs customs officials must institute forfeiture proceedings within two weeks from the date the pictures were first seized. *Sarkisian v. United States, supra,* indicates that a similar time frame must be read into the duty of customs officials to report cases to the United States attorney for prosecution after any investigation into the facts has been completed. But though *Thirty-Seven Photographs* and *Sarkisian* indicate specific time limits, we prefer to adopt the approach of *States Marine Lines v. Shultz, supra,* which declined to impose precise limits noting that, although fourteen days may be appropriate where first amendment rights are at issue, the Supreme Court had stated in *Thirty-Seven Photographs* "that constitutionally permissible limits may vary in different contexts." 402 U.S. at 374, 91 S.Ct. at 1407, 28 L.Ed.2d 822.

6. Even though Lee claims he was unable to post bond, we note that he did not seek leave to proceed *in forma pauperis.* 28 U.S.C. § 1915(a) authorizes *in forma pauperis* participation in any civil or criminal proceeding. This broad authorization led Judge Learned Hand to suggest that such provisions might apply to condemnation proceedings. *Colacicco v. United States,* 143 F.2d 410 (2d Cir.), *cert. denied,* 323 U.S. 763, 65 S.Ct. 116, 89 L.Ed. 611 (1944). Failure to seek this relief does not aid Lee's attack on the bond requirement.

## C. Sixth Amendment Claims

Plaintiffs argue that the penalties they incurred and the liability to forfeiture of Lee's van are really criminal sanctions in disguise. Accordingly, they claim that under the sixth amendment the Government cannot penalize them without affording the safeguards normally found in criminal proceedings such as notice of the charges and a trial before an article III court in which the Government must prove the offense charged beyond a reasonable doubt. They claim the right to confront witnesses, to appear through counsel, to use compulsory process, and to exercise their privilege against self-incrimination.

The three-judge court in finding no sixth amendment violation relied on *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), and the cases cited therein. In reaching the same conclusion we expand the opinion of the three-judge court somewhat.

In *Calero-Toledo*, the Supreme Court reviewed the history of forfeiture statutes and concluded that condemnation is a proceeding *in rem* against an article or piece of equipment used to violate the law, and therefore such proceedings are independent of any criminal action against the law-breakers themselves. Although a forfeiture may incidentally penalize culpable individuals, it also prevents the use of that particular piece of equipment in future crime and makes the criminal enterprise unprofitable. *Calero-Toledo v. Pearson Yacht Leasing Co., supra,* 416 U.S. at 683–687, 94 S.Ct. 2080, 40 L.Ed.2d 452. Similarly, financial penalties may be assessed in civil proceedings. *Helvering v. Mitchell, supra,* 303 U.S. at 400, 58 S.Ct. 630. But though forfeiture and penalty proceedings are nominally civil, plaintiffs are correct in stating that the courts have extended certain criminal safeguards to these situations. *E. g. One 1958 Plymouth Sedan v. Pennsyl-*vania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (exclusionary rule for evidence obtained by an illegal search). The question is which criminal procedure safeguards apply.

■ We believe that a condemnation or penalty hearing in a federal district court provides all the procedural safeguards necessary to reach a fair determination. We have no reason to believe that such a hearing would not meet plaintiffs' demands in most respects. Federal district courts are established pursuant to article III of the Constitution. Had plaintiffs elected to file a claim to the property, they would have received notice and would have had the right to use the court's process, to confront witnesses, and to appear through counsel. The privilege against self-incrimination would have applied. *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). Plaintiffs elected to forego a formal hearing, however, and thus waived their right to contest condemnation as provided by statute.

■ Plaintiffs claim that it is unfair to place the burden of proof on claimants in forfeiture proceedings. We do not agree. Although the burden is on the claimant, the Government must initially show probable cause for instituting the condemnation action before the burden shifts. 19 U.S.C. § 1615. Probable cause means that the Government must show that there are reasonable grounds for believing a violation of the customs laws was committed. Probable cause is a showing less than a *prima facie* case but more than a mere suspicion. *United States v. (One) (1) 1971 Chevrolet Corvette Auto,* 496 F.2d 210 (5th Cir. 1974). We believe this arrangement is adequate. Even though other measures characteristic of criminal proceedings attach to forfeiture and penalty situations, due process does not re-

quire proof beyond a reasonable doubt. *Bramble v. Richardson,* 498 F.2d 968 (10th Cir.), *cert. denied sub nom., Bramble v. Saxbe,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). Consequently, plaintiffs' attack on the adequacy of the available hearing procedure must fail.

### D. *Taking Property Without Compensation*

Plaintiffs' final claim is that in the absence of proof of their guilt beyond a reasonable doubt the penalties that they paid constituted a taking of their property without compensation. In *Calero-Toledo* the Supreme Court specifically rejected any requirement that the Government must establish the culpability of a claimant in order to condemn the property which he claims. Compensation was not paid because compensation was not required. *Calero-Toledo v. Pearson Yacht Leasing Co., supra,* 416 U.S. at 686–688, 94 S.Ct. 2080. In the face of this controlling statement of the law plaintiffs' claim has no merit.

### VII. RELIEF

As originally filed, the complaint prayed for injunctive and declaratory relief, return of the penalties paid, and consequential damages. Prior to the Supreme Court's decision in this matter, plaintiffs withdrew their request for consequential damages. As stated earlier in this opinion, the need for injunctive relief has long since disappeared, and in declaring the rights of the parties we have determined that the applicable statutes and regulations are constitutional and that the defendants have acted properly. Accordingly, we answer the only remaining question— whether the plaintiffs are entitled to a remission of their penalties—in the negative, and thus we hold that the plaintiffs are entitled to no relief.