538 F.2d 27
 James P. LEE, Jr., Plaintiff-Appellant,
v.
William L. THORNTON, District Director, United States
Customs for Vermont, et al., Defendants-Appellees.
Ronald RICH, Plaintiff-Appellant,
v.
William L. THORNTON, District Director, United States
Customs for Vermont, et al., Defendants-Appellees.
 No. 533, Docket 75-6089.
 United States Court of Appeals,
Second Circuit.
 Argued March 9, 1976.
Decided July 2, 1976.
 
 John A. Dooley, III (Vermont Legal Aid, Inc.), Burlington, Vt., for plaintiffs-appellants.
 Terence M. Brown, Atty., Dept. of Justice, Washington, D. C. (Shirley Baccus-Lobel, Atty., Dept. of Justice, Washington, D. C., and George W. F. Cook, U. S. Atty. for the District of Vermont, Rutland, Vt., of counsel), for defendants-appellees.
 Before KAUFMAN, Chief Judge, and SMITH and ANDERSON, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 Lee and Rich, two motor vehicle owners, whose vehicles were detained by customs officials in Vermont after crossings of the Canadian border, sued in the United States District Court for the District of Vermont, attacking the constitutionality of the statutory scheme under which the vehicles had been detained.[1]
 
 
 2
 A decision granting partial relief in favor of the plaintiffs by a three-judge district court, 370 F.Supp. 312 (1974), was vacated by the Supreme Court, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975), on the ground that the three-judge court had erroneously assumed jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2), over claims to enjoin enforcement of the challenged statutes. On remand the three-judge court found no other grounds for three-judge court jurisdiction and returned the cases to Judge Coffrin, who rejected all the claims on the merits.
 
 
 3
 We hold that, in failing to provide appellants with an adequate opportunity to contest the detention of their property, the contested statutes as here applied violated appellants' fifth amendment right to due process. We reverse and remand.
 
 
 4
 The facts have been stipulated and are well stated in the opinion of the three-judge court. 370 F.Supp. at 315-16.[2]
 
 
 5
 In brief, Lee was accused of using his van to bring in undeclared persons, merchandise and marijuana, in violation of 19 U.S.C. §§ 1459 and 1595a and 21 U.S.C. § 881, assessed a penalty of $1845, the apparent value of the van, and informed that the van and merchandise were subject to forfeiture under 19 U.S.C. §§ 1460 and 1595a and 21 U.S.C. § 881, and that he could file a petition for remission or mitigation. Such a petition is authorized to be determined by the Secretary of the Treasury, and in cases involving less than $25,000, by the district director. 19 U.S.C. § 1618; 19 C.F.R. § 171.21. Some days later Lee filed such a petition and the penalty was reduced to $100. A $250 bond is required by 19 U.S.C. § 1608 in cases involving no more than $2500, to force the government to bring a forfeiture proceeding. Lee was unable to post a bond in this amount, but did pay the $100 to recover his van.
 
 
 6
 Rich was accused of crossing the border illegally, in violation of 19 U.S.C. § 1459, not having stopped at a border station. His car was seized under 19 U.S.C. § 1594 as security for the penalty to which Rich was subject for violation of § 1459, he was permitted to file a petition for remission or mitigation and the car was released on payment of a $50 deposit toward the ultimate mitigated penalty. Later $25 was remitted to Rich.
 
 
 7
 Jurisdiction of the district court is based on the Tucker Act, which in 28 U.S.C. § 1346(a)(2) provides for relief against the United States from unlawful fines or forfeitures involving not in excess of $10,000. Glup v. United States, 523 F.2d 557, 559 n. 3 (8th Cir. 1975); Simons v. United States, 497 F.2d 1046, 1049 (9th Cir. 1974); Pasha v. United States, 484 F.2d 630, 632 (7th Cir. 1973); Menkarell v. Bureau of Narcotics, 463 F.2d 88, 90-91 (3d Cir. 1972); United States v. Compagnie Generale Transatlantique, 26 F.2d 195, 197 (2d Cir. 1928); United States v. Summa,362 F.Supp. 1177, 1180 (D.Conn.1972); Jaekel v. United States, 304 F.Supp. 993, 997 (S.D.N.Y.1969).
 
 
 8
 The district court on remand felt compelled, because of the intervening opinion of the Supreme Court in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), to reject the reasoning of the three-judge court finding the procedures constitutionally lacking. This was error, for the Calero case is clearly distinguishable from the cases before us. In light of the fact that the owner might easily abscond with the yacht there involved, the Court in Calero refused to mandate a hearing prior to seizure. We are here concerned rather with the need for immediate post-seizure hearings to avoid unreasonable continuation of the government custody of the vehicles.
 
 
 9
 There is an extremely important government interest in policing the passage of persons and articles into the country across its borders. Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chae Chan Ping v. United States, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). On the other hand, the individual has an important interest in the possession of his motor vehicle, often his most valuable possession, see Tedeschi v. Blackwood, 410 F.Supp. 34 (D.Conn.1976), and not infrequently a needed mode of transportation from a remote border point.
 
 
 10
 It is undoubtedly open to the Congress to provide for seizure of motor vehicles for customs violations or retention as security for penalties incurred by owners for customs violations. The manner in which the contested detention provisions were applied here, however, we think failed to comply with the constitutional requirement of due process of law.
 
 
 11
 In both cases vehicles were seized and held, penalties assessed and later mitigated on petition, and the vehicles released only on payment of the mitigated amounts, all without hearing. The statutes and regulations should have been interpreted to require an opportunity for prompt hearing.
 
 
 12
 It is true that review of forfeiture decisions in cases involving a vehicle worth no more than $2500 may be had under 19 U.S.C. §§ 1607 and 1608. This would provide an eventual hearing if the statutory conditions were met. This, however, fails to meet the requirements of due process. The condemnation proceedings necessarily consume substantial periods of time. Compare United States v. 37 Photographs, 402 U.S. 363, 371-72, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). Deprivation of means of transportation for such periods requires an opportunity to be heard. Moreover, the filing of a $250 bond was an insuperable obstacle to Lee, and may be too great an obstacle to many car owners seeking to force the government to proceed with forfeiture proceedings.[3]
 
 
 13
 In the case of Rich, the Service in its application of the statutes did not afford an adequate opportunity to be heard. Such an opportunity was not otherwise available to him as a matter of right. The three-judge court that originally heard these cases concluded that Rich could have obtained a hearing in which to contest his liability for his alleged violation of 19 U.S.C. § 1459 by utilizing 19 U.S.C. § 1608 to initiate forfeiture proceedings. 370 F.Supp. at 322. But, as the Service concedes, § 1608 relates only to the avoidance of summary forfeiture, see 19 C.F.R. §§ 162.45, 162.46 and 162.47, and property seized as security pursuant to 19 U.S.C. § 1594, as was Rich's car, is not subject to summary forfeiture.
 
 
 14
 Some provision for hearing is necessary under the circumstances here. The Supreme Court has spoken quite recently to the question. See, e. g., Mathews v. Eldridge, --- U.S. ----, ----, 96 S.Ct. 893, 897, 47 L.Ed.2d 18, 44, U.S.L.W. 4224, 4228-29 (1976).[4]
 
 
 15
 Eldridge instructs us that the need of the vehicle owners in the cases before us to be free from unreasonable detentions of their vehicles must be balanced against the cost and inconvenience to the government of providing some means of prompt determination of the legality of the individual detentions. The cost to the government would not be great since, as Judge Oakes pointed out, 370 F.Supp. at 321, machinery is readily available and, as was conceded in oral argument, is now in use in § 1459 cases.
 
 
 16
 On the other hand, deprivation to the individual is often serious, involving as it does possible stranding without transportation at border points remote from a traveler's destination.
 
 
 17
 Balancing, as Eldridge requires, the cost and inconvenience to the government against the seriousness of the deprivation, we hold that when vehicles are seized for forfeiture or as security, action on petitions for mitigation or remission should be required within 24 hours, with notice of the charge, and with opportunity to file a written response and to make an oral appearance and that, if requested, some kind of hearing on probable cause for the detention before an officer other than the one making the charge should be provided within 72 hours if the petition is not granted in full.
 
 
 18
 Effected in the absence of such adequate procedures, the exactions from Rich and Lee were unlawful and must be returned.
 
 
 19
 Reversed and remanded for entry of judgment for Rich to recover of the United States $25.00 and costs and for Lee to recover of the United States $100.00 and costs.[5]
 
 
 
 [1]
 19 U.S.C. § 1459 provides in pertinent part:
 (T)he person in charge of any vehicle arriving in the United States from contiguous country, shall immediately report his arrival to the customs officer at the port of entry or customhouse which shall be nearest to the place at which such . . . vehicle shall cross the boundary line . . . and if such . . . vehicle have on board any merchandise, shall produce to such customs officer a manifest as required by law, and no such . . . vehicle shall proceed farther inland nor shall discharge or land any merchandise, passengers, or baggage without receiving a permit therefor from such customs officer. . . .
 19 U.S.C. § 1460 provides in pertinent part:
 (T)he person in charge of any vehicle who fails to report arrival in the United States as required by section 1459 of this title, or if so reporting proceeds further inland without a permit from the proper customs officer, shall be subject to a penalty of $100 for each offense. If any merchandise is imported or brought into the United States in any . . . vehicle . . . from a contiguous country, which . . . vehicle, or merchandise is not so reported to the proper customs officers; or if . . . the person in charge of such vehicle fails to file a manifest for the merchandise carried therein, or discharges or lands such merchandise without a permit; such merchandise and the . . . vehicle, if any, in which it was imported or brought into the United States shall be subject to forfeiture; and . . . the person in charge of such vehicle . . . shall, in addition to any other penalty, be liable to a penalty equal to the value of the merchandise which was not reported, or not included in the manifest, or which was discharged or landed without a permit. If any . . . vehicle not so reported carries any passenger; or if any passenger is discharged . . . from any such . . . vehicle before it is so reported, or after such report but without a permit; the . . . person in charge of the vehicle shall, in addition to any other penalty, be liable to a penalty of $500 for each passenger so carried, discharged, or landed.
 19 U.S.C. § 1594 provides:
 Whenever a vessel or vehicle, or the owner or master, conductor, driver, or other person in charge thereof, has become subject to a penalty for violation of the customs-revenue laws of the United States, such vessel or vehicle shall be held for the payment of such penalty and may be seized and proceeded against summarily by libel to recover the same. . . .
 19 U.S.C. § 1595a provides:
 (a) Except as specified in the proviso to section 1594 of this title, every vessel, vehicle, animal, aircraft, or other thing used in, to aid in, or to facilitate, by obtaining information or in any other way, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law, whether upon such vessel, vehicle, animal, aircraft, or other thing or otherwise, shall be seized and forfeited together with its tackle, apparel, furniture, harness, or equipment.
 (b) Every person who directs, assists financially or otherwise, or is in any way concerned in any unlawful activity mentioned in the preceding subsection shall be liable to a penalty equal to the value of the article or articles introduced or attempted to be introduced.
 19 U.S.C. § 1605 provides that all vehicles seized under the provisions of the customs laws shall be in the custody of the collector of the district in which the seizure is made; § 1606 provides for appraisal. Where appraisal is less than $2500, § 1607 provides for notice of seizure and intention to sell and § 1608 for filing of claims within 20 days of first publication of notice and conditions condemnation proceedings on the filing of a $250 bond with the collector. Where appraised value exceeds $2500, § 1612 requires condemnation proceedings.
 21 U.S.C. § 881 provides in pertinent part:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.
 (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) . . . .
 (b) Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when
 (4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter.
 In the event of seizure pursuant to paragraph (3) or (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly.
 (d) All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof . . . .
 
 
 [2]
 On October 4 (sic: 5), 1971, plaintiff Lee's 1966 Volkswagen van was observed by a Border Patrol agent to be crossing into the United States from Canada at Alburg Springs, Vermont, although the customs station at Alburg Springs was closed. Agent Peck, who observed the crossing, followed the vehicle, driven at that time by an acquaintance of Lee, to a point in East Alburg, Vermont, where the vehicle was stopped. Lee told Peck that he had not gone to the immigration and customs station at Alburg, as directed by the signs at Alburg Springs, because he thought that his vehicle did not have sufficient fuel to reach it. Lee was ordered to proceed with the van and his passengers, including a Canadian national, to Swanton Immigration Headquarters
 After a search of the van in Swanton, Lee was informed by customs agents that they had found several items of foreign manufacture with no proof of domestic purchase, plus two clip scales and one gram of marijuana seeds; that Lee and the others were free to leave; but that the van and personal property had been seized and would be held by the officials. Lee had no opportunity to challenge the seizure of the van at that time.
 On the next (sic: same) day, October 5, 1971, Lee contacted defendant Thornton, the District Director of the Bureau of Customs, concerning the release of the property and was told that a cash deposit in the sum of $1,800 would be required to secure release of the van. On October 19, 1971, the Director advised Lee that, having been charged with violations of 19 U.S.C. § 1459, 19 U.S.C. § 1595a and 21 U.S.C. § 881, he was assessed a penalty of $1,845.00 and that the van and personal property therein were subject to forfeiture as an additional penalty. The letter also advised Lee of his right to file a petition for "mitigation and remission" under 19 U.S.C. § 1618. Lee filed that petition on October 27, 1971, in which he set forth his version of the circumstances surrounding the events of October 4 (sic: 5). On November 1, 1971, Thornton notified Lee by letter that the fine had been remitted in full and the forfeiture of the van mitigated to $100 "in view of the fact that the vehicle was found being used to transport marihuana." Unable to post a $250 bond to force the Government to institute a libel of forfeiture under 19 U.S.C. § 1608, Lee paid the $100 and secured the release of the van.
 Plaintiff Rich, his wife and two minor children crossed the border from Canada into the United States via the Wolfridge road in Alburg, Vermont, on October 27, 1971, and did not pass through a customs station. Under observation by a Border Patrol agent, Rich's automobile was stopped in the vicinity of Swanton, Vermont. Rich was accused by the agent of having crossed the border illegally and was directed to proceed to the border station at Highgate, Vermont. At the Highgate station, the automobile was searched and seized, and Rich was advised of the nature of the charge against him under 19 U.S.C. § 1459 and the statutory penalty that could be assessed under 19 U.S.C. § 1460. Like Lee, he was informed that he could file an immediate petition for remission and mitigation of penalties pursuant to 19 U.S.C. § 1618. Rich filed a petition at that time and was told by Customs Inspector Clark that a cash deposit of $50 "toward the ultimate mitigated penalty" would secure the release of the automobile under 19 U.S.C. § 1614. 1 Rich paid the deposit and the automobile was released. On January 6, 1972, Rich received a "Notice of Penalty Incurred and Demand for Payment" (Customs Form 5955A) which, among other things, advised him as to his rights and the procedures required to request administrative relief. No further petition was filed, and on January 14, 1972, Thornton notified Rich by letter that the penalty had been mitigated to $25 and that this penalty would be deducted from his $50 deposit, the balance owed to be returned in due course. The discussion with Inspector Clark was the only opportunity given to Rich during the course of events to state his version of the facts in person.
 
 
 [1]
 Although the record is not free from doubt, this determination apparently constituted a finding by Clark that Rich's automobile was worth $50, since under 19 U.S.C. § 1614, the deposit must cover the full value of the vehicle as appraised under 19 U.S.C. § 1606. Presumably a similar finding was also made with respect to defendant Thornton's statement to plaintiff Lee that an $1,800 deposit would be required to secure the release of his van, supra
 
 
 [3]
 28 U.S.C. § 1915 is probably not available to excuse the bond requirement since the bond is required to be paid to the customs officer rather than the court prior to commencement of action. This barrier to relief is an additional ground for finding a lack of due process. Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)
 
 
 [4]
 This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. Wolff v. McDonnell, 418 U.S. 539, 557-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See, e. g., Phillips v. Commissioner, 283 U.S. 589, 596-597, 51 S.Ct. 82, 75 L.Ed. 738 (1931). See also Dent v. West Virginia, 129 U.S. 114, 124-125, 9 S.Ct. 231, 32 L.Ed. 623 (1889). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of criminal conviction, is a principle basic to our society." Joint Anti-Fascist Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). See Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). Eldridge agrees that the review procedures available to a claimant before the initial determination of ineligibility becomes final would be adequate if disability benefits were not terminated until after the evidentiary hearing stage of the administrative process. The dispute centers upon what process is due prior to the initial termination of benefits, pending review
 In recent years this Court increasingly has had occasion to consider the extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is provided thereafter. In only one case, Goldberg v. Kelly, 397 U.S. 254, 266-271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), has the Court held that a hearing closely approximating a judicial trial is necessary. In other cases requiring some type of pretermination hearing as a matter of constitutional right the Court has spoken sparingly about the requisite procedures. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), involving garnishment of wages, was entirely silent on the matter. In Fuentes v. Shevin, 407 U.S. 67, 96-97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court said only that in a replevin suit between two private parties the initial determination required something more than an ex parte proceeding before a court clerk. Similarly, Bell v. Burson, 402 U.S. 535, 540, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90 (1971), held, in the context of the revocation of a state-granted driver's license, that due process required only that the prerevocation hearing involve a probable-cause determination as to the fault of the licensee, noting that the hearing "need not take the form of a full adjudication of the question of liability." See also North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 607, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). More recently, in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), we sustained the validity of procedures by which a federal employee could be dismissed for cause. They included notice of the action sought, a copy of the charge, reasonable time for filing a written response, and an opportunity for an oral appearance. Following dismissal, an evidentiary hearing was provided. Id., at 142-146, 94 S.Ct. 1633.
 These decisions underscore the truism that " '(d)ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Cafeteria & Restaurant Workers Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "(D) ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. Arnett v. Kennedy, supra, at 167-168, 94 S.Ct. 1633, 5 L.Ed.2d 15 (Powell, J., concurring); Goldberg v. Kelly, supra, 397 U.S. at 263-266, 90 S.Ct. 1011; Cafeteria & Restaurant Workers Local 473 v. McElroy, supra, 367 U.S. at 895, 81 S.Ct. 1743. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, e. g., Goldberg v. Kelly, supra, 397 U.S. at 263-271, 90 S.Ct. 1011.
 Mathews v. Eldridge, --- U.S. ----, ----, 96 S.Ct. 893, 897, 47 L.Ed.2d 18, 44 U.S.L.W. 4224, 4228-29 (1976).
 
 
 [5]
 The United States was added as a party defendant on motion in the district court