**Richard JOHNS, III, Plaintiff-Appellant,**

v.

**Stanley E. McKINLEY, Immigration and Naturalization Service (INS) Regional Commissioner for the Eastern Region, Alan C. Nelson, Commissioner of the INS, and Benedict J. Ferro, District Director, Buffalo INS, Western District of New York, Defendants-Appellees.**

No. 170, Docket 84–6160.

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1984.

Decided Jan. 31, 1985.

Gerald P. Seipp, Buffalo, N.Y. (Serotte, Reich & Goldstein, Buffalo, N.Y., on brief), for plaintiff-appellant.

Rodney O. Personius, Asst. U.S. Atty., Buffalo, N.Y. (Salvatore R. Martoche, U.S. Atty., W.D.N.Y., Buffalo, N.Y., on the brief), for defendants-appellees.

———

Before: MANSFIELD and KEARSE, Circuit Judges, and METZNER, District Judge.[*]

KEARSE, Circuit Judge.

Plaintiff Richard Johns, III, appeals from a final judgment of the United States District Court for the Western District of New York, John T. Elfvin, *Judge*, dismissing his complaint for damages and the return of a 1982 Ford tractor cab seized at the United States-Canadian border by officials of the United States Immigration and Naturalization Service ("INS") on July 21, 1983. The defendants are Stanley E. McKinley, Regional Commissioner for the Eastern Regional Office of INS; Alan C. Nelson, Commissioner of INS; and Benedict J. Ferro, District Director of INS's Western New York office. The district court held, *inter alia*, that Johns had no right to the return of his cab and that none of these defendants was responsible for the delay now complained of in the processing of Johns's request for the return of his cab. We agree that Johns had no right to compel the return of his cab and that McKinley and Ferro had no responsibility for the delay now complained of; we therefore affirm the judgment as to those two defendants. We are unable to conclude, however, that Nelson had no responsibility for that delay; accordingly, the judgment dismissing the complaint against Nelson is vacated and

---

[*] Honorable Charles M. Metzner, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

the matter is remanded for further proceedings.

## I. BACKGROUND

The events that led to this lawsuit are not substantially in dispute. On July 10, 1983, Johns entered the United States from Canada. He was accompanied by his Canadian girl friend Heather Owen who was, however, denied entry because of her prior Canadian conviction of a narcotics offense. On July 21, 1983, Johns attempted to smuggle Owen into the United States. As he again entered from Canada, Johns told INS officials that he was alone, but a search revealed Owen hiding in the sleeper compartment of the tractor cab. INS thereupon seized Johns's cab.[1]

Johns, a cross-country trucker whose cab was also his residence for most of the year, immediately began his efforts to regain possession of his cab. He retained Gerald Seipp, an attorney experienced in INS matters, who, beginning on July 22, made a series of telephone calls to the INS regional office. Seipp conceded Johns's violation of the immigration laws and requested a prompt adjudication of a request for "mitigation," *i.e.*, a determination that may result in the return of a seized item to an owner who is not innocent of wrongdoing. *See* 8 C.F.R. § 274.15 (1984). On July 26, 1983, Seipp sent a detailed letter to McKinley's office setting forth Johns's claim for mitigation ("July 26 Letter"). The letter stated that Owen had not sought permanent residence in the United States but merely wanted to accompany Johns as a vacation of sorts; that Johns's violation of the immigration laws should be considered a minor one in the overall scheme of things; that expeditious handling of Johns's request for mitigation was needed because the loss of the tractor cab was preventing Johns from earning a living and was necessitating expenses for food and lodging that he would not otherwise incur; and that Johns would be willing to pay a reasonable fine for his offense, suggesting the amount of $500. In a July 29 telephone conversation, INS regional office counsel advised Seipp, *inter alia*, that the July 26 Letter could not be considered a petition for mitigation because it did not comply with INS regulations; that INS never quickly compromised a vehicle forfeiture case in the manner urged by Johns; and that, because the value of the cab exceeded $10,000, INS would be required to commence judicial forfeiture proceedings and it might be necessary for the Attorney General of the United States to consider any administrative applications for relief. Seipp eventually informed McKinley's office that a lawsuit would be commenced.

On August 3, 1983, Johns commenced the present action and moved for a preliminary injunction ordering INS to release the cab to Johns immediately. The complaint identified District Director Ferro as the supervisor of the INS agents who had seized the cab; Regional Commissioner McKinley as the statutory custodian of the cab; and INS Commissioner Nelson as the person responsible for the overall conduct of INS. It alleged that the defendants had "refus[ed] to promptly issue appropriate relief in the nature of remission or mitigation," in violation of Johns's due process rights. Johns sought, *inter alia*, $10,000 in damages and the return of his cab.

In support of the injunction motion, Seipp submitted an affidavit recounting his communications with McKinley's office. Johns submitted an affidavit reiterating many of the assertions made in Seipp's July 26 Letter and setting forth in greater detail the hardship Johns was suffering as a result of the delay in recovery of his cab. He stated that his contract with his employer was due to expire on August 10, 1983, and that although he would normally have anticipated no difficulty in renewing it, the delay in recovery of his cab was interfering with his performance of his obligations and could lead to the loss of his job. In addition, the delay in his return to gainful employment threatened his ability to make the installment payments due on

---

1. The government elected not to institute criminal proceedings against Johns.

**1198**

the cab, thus creating the risk that even if the cab were eventually released by INS, a lengthy delay prior to such release might cause him to lose the cab to his finance company.

The injunction motion was argued on August 8, and the court reserved decision. The motion was never explicitly decided. On August 8, INS forwarded the administrative file to the United States Attorney for the institution of forfeiture proceedings against the cab. On August 10, Johns filed with the U.S. Attorney's office a formal petition for mitigation that complied with 8 C.F.R. § 274.13 (1984). On the same day, the government commenced forfeiture proceedings against the cab in the district court. Apparently, nothing further happened for more than two months.[2]

On October 14, Johns filed a supplemental affidavit by Seipp seeking action on his motion for preliminary injunctive relief. Seipp pointed out that more than nine weeks had elapsed since the filing of Johns's formal petition for mitigation, with no sign of a response from the government. By letter dated that same day, the Department of Justice advised Seipp that John's petition for mitigation would be granted on three conditions: that he dismiss the present action, that he sign a release from liability as a result of the seizure, and that he pay a fine of $5,000.

On October 18, the defendants moved for dismissal of the complaint for lack of jurisdiction, or failure to state a claim upon which relief may be granted, or summary judgment. Defendants argued, *inter alia,* that under the pertinent regulations they had no authority to rule on Johns's petition for mitigation, and that that authority lay with the Assistant Attorney General of the United States in charge of the Criminal Division ("Assistant AG/CD"), to whom the petition and other pertinent documents had been promptly forwarded. Several weeks later, Johns cross-moved for summary judgment in his favor. Johns did not

assert that the defendants here had in any way caused a delay in sending the petition to the Assistant AG/CD or that there was any issue of fact as to that question.

In an opinion dated April 27, 1984, the district court granted defendants' motion for summary judgment and dismissed the complaint. The court rejected Johns's argument (not pursued on this appeal) that defendants had unreasonably delayed the institution of forfeiture proceedings. As to the government's action on the mitigation petition, the court found that the July 26 Letter did not conform to the requirements of INS regulations for a petition for mitigation and that a proper petition was not filed until August 10; hence the delay of the government in acting upon Johns's petition for mitigation was 65 days. Since the value of the cab was in excess of $10,000, INS regulations required that the petition be filed with, or forwarded to, the U.S. Attorney and ruled upon by the Assistant AG/CD. The court found that the Johns petition had been duly forwarded to those officials and that the authority to rule on the petition for mitigation did not reside in the defendants.

The court also found that the 65-day delay by the Assistant AG/CD in acting on the petition was not unreasonable in light of the facts that Johns had admitted violating the immigration laws, he had not taken advantage of the procedural step of an interview with INS on the day following the seizure to determine his eligibility for the return of his cab, and in any event he had no right to a favorable determination of his petition.

This appeal followed.

## II. DISCUSSION

On appeal, Johns has expressly abandoned any contention that the government unreasonably delayed in instituting forfeiture proceedings. Instead he contends principally (1) that the procedures provided by INS for the processing of requests for

2. On August 19, 1983, Seipp wrote Judge Elfvin, informing him that a formal petition for mitigation had been filed and had apparently been forwarded to an Assistant Attorney General in Washington. Seipp urged an early decision on Johns's injunction motion.

mitigation of forfeitures do not provide an adequate opportunity for a claimant to obtain a decision with reasonable promptness and hence they deny the claimant due process of law; and (2) that the 65-day delay of the Assistant AG/CD in acting on Johns's petition for mitigation was unreasonable and denied Johns due process. While we cannot say that there is no merit in these contentions, we agree with the district court that neither may properly be asserted as a basis for the liability of McKinley and Ferro. We conclude, however, that Johns's first contention arguably asserts a basis for liability on the part of Nelson.

A. *The Regulatory Scheme*

The procedures to be followed upon the seizure of a vehicle by the INS are set forth in regulations published at 8 C.F.R. §§ 274.1–274.21 (1984). The procedures are intricated by the facts that several types of relief are envisioned, different procedures are to be followed by owners than by lienholders, different criteria apply to innocent persons than to culpable persons, and different procedures apply depending on the value of the vehicle. Further, the scope of authority granted in some provisions appears to be limited in other sections, with no acknowledgment of the limitation in the former.

The value of the seized vehicle determines the method by which its forfeiture may be declared. A vehicle having an appraised value of $10,000 or less may be summarily forfeited by action of the INS regional commissioner unless the owner demands a judicial forfeiture proceeding and posts a bond. *Id.* § 274.11. A vehicle having a greater value may be declared forfeited only in a judicial proceeding. *Id.* § 274.12.

Two sections make general provision for the return of a vehicle to an interested party who has had no culpability in the violation for which the vehicle was seized. Section 274.5 gives the owner of the seized vehicle the right to request a personal interview with an immigration officer in or-

der to establish his lack of culpability. If the owner can show either that the vehicle was unlawfully in the possession of some other person, or that the vehicle was used in an act to which the owner was not privy or did not consent and that he took all reasonable steps to prevent the illegal use of the vehicle, the vehicle will not be subject to forfeiture. Similarly, § 274.14 provides that a person holding a lien against the seized vehicle may procure a "remission" of the forfeiture, *i.e.*, a decision not to declare forfeiture, if he can establish, *inter alia*, that the lienholder at no time had any reason to believe that the vehicle was being or would be used in violation of the law and that he had taken all reasonable steps to prevent the illegal use of the vehicle. Neither of these provisions was available to Johns, who admitted having committed the violation that led to the seizure.

For a culpable owner such as Johns, the regulations provide that a petition may be filed seeking "mitigation" of the forfeiture, *i.e.*, relief from the forfeiture upon the payment of a money penalty and on such other conditions as the authorities may consider appropriate in the circumstances. Thus, § 274.13 provides as follows with respect to a petition for either mitigation or remission:

(a) Any person having an appropriate property interest in any conveyance which has been seized may file a petition. The petition shall be filed with the regional commissioner if the conveyance is subject to summary forfeiture under § 274.11 of this part [*i.e.*, the value of the conveyance does not exceed $10,000], and filed with the Attorney General if the conveyance is subject to judicial forfeiture under § 274.10 or § 274.12 of this part [*i.e.*, the value is greater than $10,000]. The petition must be executed and sworn to by the person alleging an interest in the conveyance.

(b) The petition must include ... (3) the facts and circumstances relied upon by the petitioner to justify remission [or] mitigation ....

. . . .

(d) Although a petitioner has satisfactorily established compliance with the administrative conditions applicable to the particular situation, the regional commissioner may deny relief if there are unusual circumstances present which provide reasonable grounds for concluding that remission or mitigation of the forfeiture would be contrary to the interests of justice.

Section 274.15, which is devoted solely to petitions for mitigation, provides as follows:

(a) In addition to discretionary authority to grant relief by way of complete remission of forfeiture, the regional commissioner may mitigate forfeitures of seized conveyances. A petition for mitigation may be filed only as provided for in § 274.13 of this part. To be eligible for relief under this section, the petitioner must establish that return of the vehicle promotes the interests of justice and does not diminish the deterrent effect of section 274(b) of the Act. Mitigation will take the form of a money penalty imposed upon the petitioner in addition to any other sums chargeable as a condition to remission. This penalty is considered as an item of cost payable by the petitioner.

(b) Grant of a petition for mitigation is conditioned upon:

(1) Execution of an instrument by the petitioner holding the government, its agents, and employees harmless from all claims which may result from the grant of mitigation;

(2) Execution of an agreement that the vehicle shall not be returned to any culpable owner; [3] and

(3) Any other terms or conditions as the regional commissioner determines to be appropriate.

Finally, the authority of the regional commissioner to grant a petition for mitiga-

tion is apparently limited by § 274.19, which establishes the procedure for the government's handling of petitions for mitigation or other relief in cases referred to the U.S. Attorney for judicial forfeiture proceedings:

(a) If the petition involves a case which has been referred to the U.S. Attorney for institution of judicial forfeiture, the regional commissioner shall transmit the petition to the U.S. Attorney for the judicial district in which the seizure occurred. The regional commissioner shall notify the petitioner of this action.

(b) The regional commissioner shall initiate a Service investigation into the merits of every petition transmitted to the U.S. Attorney, and shall, if requested, promptly submit a report to the U.S. Attorney.

(c) Upon receipt of a petition and a copy of the investigation, the United States Attorney shall forward a copy of the petition, the report, and a recommendation as to the grant or denial of the petition to the Assistant Attorney General, Criminal Division, Department of Justice for adjudication.

8 C.F.R. § 274.19.

### B. Johns's Due Process Contentions

█ Complicated though the INS regulations may be, Johns does not contend that they were unknown or unfathomable.[4] Rather, he contends that the regulations establish so cumbersome a procedure that a prompt determination of a petition for mitigation is impossible. As a result, he urges us to rule that the Due Process Clause required defendants to rule on his request for mitigation without his having to file a petition that meets the requirements of § 274.13. We decline to do so. We find no merit in the suggestion that the requirement that a petition be filed in conformity with § 274.13 violates a claimant's

---

**3.** This language would seem to make mitigation a type of relief not available to a culpable owner. INS has not, apparently, so interpreted its regulations.

**4.** "Seipp was well aware of the operative statutes and regulations . . . ." (Johns brief on appeal at 4.)

right to due process. The requirements for such a petition are not onerous, and there is no inherent delay in requiring that a proper petition be filed.[5]

On the other hand, it is clear that in the present case 65 days elapsed between the filing of Johns's petition and the decision of the Assistant AG/CD. The import of this time lapse is not clear. It is possible, although defendants have come forward with no evidence to suggest this is so, that 65 days was not an unreasonable time to consume in reaching a decision. Or it is possible that this time lapse was unreasonable and violated Johns's right to due process, either because the delay was inherent in the required procedures for processing a mitigation petition or because of unreasonable ad hoc delay on the part of the Assistant AG/CD. These possibilities merit further exploration in the district court within the appropriate analytical framework and with a focus on the persons who may properly be held responsible for unreasonable action or inaction.

### 1. *The Constitutional Analysis*

The district court concluded that the passage of 65 days between the filing of and the ruling on the petition for mitigation could not have violated Johns's due process rights because (1) Johns had admitted violating the immigration laws, (2) he had not taken advantage of the opportunity to have an interview with an INS official on the day following the seizure, and (3) Johns had no right to the return of his vehicle. We find that none of these factors leads to the conclusion that Johns's constitutional rights are not implicated.

First, the fact that Johns had admitted his violation of the immigration laws cannot provide either an explanation or a justification for the lengthy period taken to decide his petition. The mitigation remedy, which "take[s] the form of a money penal-

ty," *see* 8 C.F.R. § 274.15, virtually presupposes that the claimant is not blameless. (If an owner claimed to be blameless, he could seek a ruling that the vehicle was not subject to forfeiture which would result in his regaining the vehicle without paying a fine. *See id.* § 274.5.) Thus, Johns's admission of culpability is not reason to excuse the 65-day period taken to rule on a petition for mitigation; rather it is reason to question why so much time elapsed.

Second, we think the court misunderstood the regulations when it relied on the fact that Johns did not seize the opportunity for an interview. That procedure appears to be available only under § 274.5, which allows a *non*culpable owner to show his innocence and thereby persuade INS that there should be no forfeiture. There is no mention of such an interview in the sections dealing with petitions for mitigation of forfeiture. Indeed, defendants stated in the district court that "the sole purpose of an interview was to resolve whether Plaintiff was an innocent owner of the seized vehicle." (Defendants' Memorandum in Support of Motion for Dismissal, or, in the Alternative, Summary Judgment at 4.) Since Johns had conceded culpability, the interview process had no applicability in his case.

Finally, although the matter of whether or not to grant a petition for mitigation appears to be committed to the government's unfettered discretion, and hence Johns would have no right to have the district court either compel a favorable decision or overturn the denial of his petition, we believe that factor is not dispositive of whether he had a constitutional right to a reasonably prompt decision. As we and the Ninth Circuit have noted in cases involving seizures of vehicles by the United States Bureau of Customs ("Customs"), in which the decision whether or not to grant

---

**5.** Thus, although we are sympathetic to so much of Johns's plight as results from the 65-day time lapse following the filing of his proper petition, we cannot help noting that the entire 3-week period prior to August 10 must be laid at Johns's door on account of his counsel's tactical decision not to file such a petition at the outset. (Indeed, Johns's brief on appeal suggests that the decision to file a proper petition was made only after Judge Elfvin questioned, at the August 8 oral argument, the prior failure to do so.)

a petition for mitigation is likewise entirely discretionary with the government, *see United States v. Heckinger,* 163 F.2d 472, 474 (2d Cir.1947), *approving United States v. One 1946 Plymouth Sedan,* 73 F.Supp. 88 (E.D.N.Y. 1946); *United States v. L'Hoste,* 609 F.2d 796, 811 (5th Cir.1980); *United States v. One 1961 Cadillac,* 337 F.2d 730 (6th Cir.1964), the failure of the government to provide procedures for the prompt determination of whether to return a seized vehicle may well constitute a violation of due process. Thus, in *Lee v. Thornton,* 538 F.2d 27 (2d Cir.1976), we noted that "the individual has an important interest in the possession of his motor vehicle, often his most valuable possession," *id.* at 31, and ruled that "in failing to provide appellants with an adequate opportunity to contest the detention of their property, the contested statutes as here applied violated appellants' fifth amendment right to due process," *id.* at 30. We concluded that "when vehicles are seized [by Customs] for forfeiture or as security, action on petitions for mitigation or remission should be required within 24 hours ...." *Id.* at 33.

Similarly, in *Von Neumann v. United States,* 660 F.2d 1319 (9th Cir.1981) (*"Von Neumann I"*), *vacated and remanded,* 462 U.S. 1101, 103 S.Ct. 2446, 77 L.Ed.2d 1328 (1983), the Ninth Circuit noted that "[t]he need for prompt action is particularly acute where the seized property is an automobile, because 'both the necessities and amenities of life may depend upon the availability of an automobile when needed,'" *id.* at 1324 (quoting *Stypmann v. City & County of San Francisco,* 557 F.2d 1338, 1343 (9th Cir.1977)), and ruled that due process requires Customs to act promptly in ruling on petitions for remission or mitigation. Adhering to these views on remand from the Supreme Court, the *Von Neumann* court instructed the district court to determine whether the

government's one-month delay in processing von Neumann's petition for remission or mitigation violated his due process right to a prompt determination of his claim.[6] *Von Neumann v. United States,* 729 F.2d 657, 662 (9th Cir.1984) (*"Von Neumann II"*), *on remand from* 462 U.S. 1101, 103 S.Ct. 2446, 77 L.Ed.2d 1328 (1983), *vacating* 660 F.2d 1319 (9th Cir.1981).

We see no reason why an owner's right to a prompt decision on his petition for the return of his seized vehicle should be any different when the seizure is made by INS rather than by Customs. While the interests served by the two agencies differ somewhat, they are similar, and the deprivation suffered by the owner does not vary with the identity of the taker. Thus, though we express no view at this time as to whether *Lee's* 24-hour deadline should be imposed on INS, we are unimpressed by the contention of these defendants that the *Lee* and *Von Neumann* cases have no applicability to the present controversy.

We also reject defendants' suggestion that the implication of *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), is that Johns has no due process rights here. In *Dumschat,* the Supreme Court held that because the state parole authority had complete discretion in determining whether or not to commute a life sentence to a shorter sentence, it was not required to give a reason for deciding not to commute a given sentence. The Court ruled that the fact that the state board had granted approximately 75% of the commutation applications it had received did not create a constitutionally-protected liberty interest such that the denial of an application required explanation.

*Dumschat* differs from the present case in two material respects. First, in *Dumschat,* the inmates sentenced to life imprisonment had no liberty interest in freedom

6. In determining whether a delay in acting on a petition for mitigation has infringed upon the owner's due process rights, the court must consider the length of the delay, the reason for the delay, the character of the owner's assertion of his rights, and the prejudice to the owner occa-

sioned by the delay. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 2011–12, 76 L.Ed.2d 143 (1983); *Von Neumann II, supra,* 729 F.2d at 660.

from imprisonment prior to the statutorily defined parole date; the question was whether the state board's pattern of approving applications for commutation of life sentences, whereby eligibility for parole could be accelerated, had created a new liberty interest in release prior to the original date. Here, on the other hand, it is indisputable that Johns was seeking to protect an existing cognizable property interest. He was the owner of the cab; and his ownership had not been extinguished by a declaration of forfeiture.

Second, Johns's request for a speedy decision of his petition for mitigation is substantively different from a request for an explanation of a negative decision. Where the deciding authority has complete discretion that is essentially unreviewable on appeal, an explanation of a negative decision would be of no consequence. In contrast, the timing of the unreviewable decision, especially where an existing cognizable interest is at stake, may well have substantial consequences. Thus, where, as here, the seized vehicle provides the claimant's livelihood and residence, a prompt decision—whether favorable or unfavorable—would enable the claimant to make intelligent decisions as to what steps he must take with respect to earning a living, paying his debts, and otherwise planning the course of his life. If Johns's contention here were that the government was required to state a reason for denying his petition for mitigation, we would think *Dumschat* controlling; we do not find it applicable, however, to the present claim that the INS regulations as established or as applied violated his due process right to a prompt decision.

■ We conclude that Johns was entitled to a not unreasonably delayed decision as to whether, and on what conditions, his $65,000 tractor cab would be returned to him. The question remains as to who may properly be held liable if it is determined that Johns's right to a prompt decision was violated.

2. *The Roles of the Present Defendants*

■ The three defendants sued here play quite different roles in the regulatory scheme. First, the district director is nowhere mentioned in the regulations. Thus, although the complaint states that persons under Ferro's supervision seized the cab and that Ferro refused to grant Johns mitigation, the regulations did not give Ferro any authority or any responsibility with respect to the cab after its seizure. Accordingly, since Johns admitted his violation of the immigration laws and hence the lawfulness of the initial seizure, we see no basis on which Ferro may be held liable to Johns.

Further, we conclude that McKinley, the statutory custodian of the vehicle, had no authority to grant Johns's petition for mitigation. The assessed value of Johns's tractor cab was $65,000. Under § 274.12, therefore, McKinley was required to send the matter to the U.S. Attorney's office for the commencement of judicial forfeiture proceedings. He duly sent the matter to that office on August 8, 1983; and under § 274.19, his authority to act on a petition for the return of Johns's cab ended at this point, two days before Johns's actual filing of the petition. McKinley's role after August 8, according to the regulations, was only to investigate the merits of the petition and report to the U.S. Attorney, who was then to forward the petition to the Assistant AG/CD "for adjudication." *Id.* Thus the authority to decide Johns's petition for mitigation, once it was filed, resided in the Assistant AG/CD; and since Johns made no suggestion that McKinley in any way caused a delay in sending the petition to the Assistant AG/CD, there is no basis for the imposition of liability on McKinley.

We find the case different as to Nelson. Although the INS Commissioner is nowhere mentioned in the regulations, and in the district court all three defendants argued that they had no authority to grant Johns's petition, Nelson occupies a quite different role from the other two defendants since as INS Commissioner he is re-

sponsible for the regulations themselves. In 8 U.S.C. § 1103 (1982), Congress granted the Attorney General the power to promulgate regulations for the proper enforcement of the immigration laws and allowed him to delegate that authority to the Commissioner of INS. The Attorney General has delegated INS regulation-making authority to the INS Commissioner. *See* 28 C.F.R. §§ 0.105(a) and (b) (1984) (INS Commissioner shall "exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by [8 U.S.C. § 1103], including the authority to issue regulations."). As INS Commissioner, Nelson is responsible for the regulations at issue here. Indeed, he promulgated them. *See* 47 Fed.Reg. 19, 315–20 (1982).

Thus, to the extent that there may be merit in Johns's contention that the regulations enact a procedural scheme so cumbersome that a reasonably prompt decision on a mitigation petition is not practically possible, it is appropriate that INS Commissioner Nelson answer such a charge. Since we conclude that that contention cannot be rejected on the basis of the present record, we conclude that the complaint against Nelson was improperly dismissed.

It may, of course, transpire on remand that the regulations are capable of being applied in a fashion that does not deny a claimant his right to a reasonably prompt determination, and that the decision on Johns's petition was unreasonably delayed by nonsystemic inaction on the part of the Assistant AG/CD. A conclusion that persons other than Nelson caused Johns's rights to be violated would not necessarily give Johns a cause of action against Nelson if Nelson did not participate or knowingly acquiesce in the delay. *See, e.g., Leonhard v. United States*, 633 F.2d 599, 621 n. 30 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Black v. United States*, 534 F.2d 524, 527–28 (2d Cir.1976). In this eventuality, Johns's only recourse may be an action against the Assistant AG/CD.

The present record simply does not provide the answers to these questions. The sparseness of the record as to the reason for the 65-day time lapse may, of course, be attributable to the fact that the Assistant AG/CD was not made a defendant to the lawsuit; and the failure to join the Assistant AG/CD may, in turn, be attributable to the fact that when the lawsuit was commenced, no formal petition for mitigation had been filed—hence the 65-day period now complained of had not then even begun. In any event, the questions of whether there was an unreasonable delay and, if there was, whether it was caused by the regulatory scheme itself or by nonsystemic inaction remain to be explored on remand.

## CONCLUSION

The judgment of the district court dismissing the complaint is affirmed with respect to McKinley and Ferro, and is vacated with respect to Nelson. The matter is remanded for further proceedings not inconsistent with this opinion.

No costs.

METZNER, District Judge (concurring and dissenting)

I respectfully dissent from the results reached by my colleagues on this appeal to the extent that they reverse the dismissal of the complaint against defendant Nelson.

The whole matter has turned into a procedural mess due to the obstinacy of plaintiff's counsel who admits an expertise in the field of immigration law. If he had followed the designated procedures initially in this case, the matter would have been resolved on the merits a long time ago.

Plaintiff admittedly violated the law when he attempted to smuggle into this country his Canadian girl friend who was excludable because of a criminal record. The seizure by the immigration officials of the tractor cab owned by plaintiff and used to bring the young woman into the country was perfectly proper.

Plaintiff's counsel did not follow the procedures provided by the regulations to re-

gain this tractor cab valued at $65,000. He decided that the matter could be taken care of informally by phone calls and a letter to local officials. This was his error.

Local immigration officials informed him that he was not following proper procedures but, undaunted, he instituted the present lawsuit based on the actions he had taken up to that point. He sued Nelson, the Commissioner of INS, McKinley, the Regional Commissioner of INS, and Ferro, the District Director of INS for Buffalo, alleging that their failure to act promptly on his petition violated his constitutional rights. He further alleged that the regulations do not make available procedures for prompt disposition of petitions for mitigation. A week after filing the lawsuit, he finally followed the proper procedures, but he never amended the substantive allegations of his complaint or brought in the proper parties necessary to obtain the relief sought.

Given a set of facts, it does not require great expertise to know what the proper course of action is under the applicable regulations. A case involving a vehicle with a value of more than $10,000 must be referred to the United States Attorney who, under the regulations, must commence judicial forfeiture proceedings. 8 C.F.R. § 274.12 (1984). Prior to the matter being referred to the United States Attorney for institution of judicial forfeiture proceedings, the plaintiff is entitled to file a petition for mitigation (Section 274.15) with the Attorney General (Section 274.13). If the case has already been submitted to the United States Attorney for institution of judicial forfeiture, the petition for mitigation should be filed with the United States Attorney (Section 274.19(a)). The United States Attorney *may* request that the regional commissioner submit a report of his investigation as to the merits of the petition (Section 274.19(b)). (There is no indication that such a report was requested in this case.) The United States Attorney then forwards the petition with his recommendation to the Assistant Attorney General, Criminal Division of the Department of Justice, for adjudication (Section 274.-19(c)).

Plaintiff filed his lawsuit on August 3, 1984. On August 8, the INS referred the matter to the United States Attorney to commence judicial forfeiture proceedings as required by the regulations. On August 10, plaintiff filed his petition for mitigation directly with the United States Attorney, who referred the matter to the Assistant Attorney General, Criminal Division. But the case still went forward on the claim that the local immigration officials and Nelson, as the draftsman of the regulations, were proper defendants, and that the regulations were constitutionally defective. In this posture the lawsuit could never resolve the question of whether the constitutional rights of the plaintiff were violated. The court below granted defendants' motion for summary judgment and denied the cross-motion by plaintiff for summary judgment.

We now find this court trying to straighten the matter out by dropping certain defendants and suggesting that other defendants be brought in. I daresay an amendment of the substance of the complaint will also be necessary.

I agree with Judge Kearse that in this case the local officials had no responsibility. The fact that Nelson may have drawn the regulations should not make him a party defendant. It is only the person who has the responsibility of carrying out the duties detailed by the regulations who is the proper party defendant. It is the timing of the action of the Assistant Attorney General that is in question here. It is perfectly clear under the regulations that Nelson had no responsibilities in this case, and, as Judge Kearse properly points out, he can be held liable only if he participated or knowingly acquiesced in the delay. The fact that Nelson was the draftsman cannot be a basis for a finding of knowing acquiescence.

Finally, if the proper procedures had been followed in the first place, we would then be in a position to evaluate the true merits of this case under *United States v. Eight Thousand Eight Hundred and Fifty*

**1206**

*Dollars ($8,850) in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

The judgment of the court below should be affirmed and the plaintiff permitted to institute an action against the proper parties with a proper complaint, so that the matter can be clearly presented for determination to the lower court.

MANSFIELD, Circuit Judge (Concurring in part and dissenting in part)

I concur in so much of Judge Kearse's opinion as holds that INS Commissioner Alan C. Nelson may be held liable for a denial of due process in unreasonably delaying the disposition of a petition for mitigation of forfeiture filed under 8 C.F.R. § 274.13. I also concur in the dismissal of the complaint with respect to District Director Benedict J. Ferro for the reason that there is no indication that he had any responsibility for the 65-day delay complained of by Johns. However, I must respectfully dissent from the affirmance of the dismissal of the complaint against Regional Commissioner Stanley E. McKinley. I would also expressly provide that remand be without prejudice to Johns' amending his complaint to add as defendants the Assistant Attorney General, Criminal Division, U.S. Department of Justice, and the United States Attorney for the Western District of New York.

The proceedings here under review are governed by due process principles. *See Von Neumann v. United States,* 660 F.2d 1319 (9th Cir.1981), *vacated and remanded,* 462 U.S. 1101, 103 S.Ct. 2446, 77 L.Ed.2d 1328 (1983), *on remand, Von Neumann v. United States,* 729 F.2d 657 (9th Cir.1983). Johns was entitled to a decision on his petition for mitigation within a reasonable period of time. In my view the 65-day delay between Johns' August 10, 1983, filing of his petition for mitigation and the Department of Justice's October 14, 1983, disposition of that petition was, for the reasons stated at p. 1623 of Judge Kearse's opinion, unconscionable under the undisputed circumstances and amounted to

a denial of due process, particularly since Johns had made it clear by his letter of July 26, 1983, to the INS, his telephone conversation with INS regional office counsel on July 29, 1983, and the commencement of this action on August 3, 1983, that he was not contesting forfeiture but was seeking mitigation. The defendants have offered no plausible explanation for their long delay in disposing of the petition. On the contrary, the record reveals bureaucracy at its worst, with government officials relying on a confusing, internally inconsistent, Kafkaesque set of regulations as the ground for the otherwise inexplicable delay.

We have already made clear that such dilatory conduct is not to be countenanced. In *Lee v. Thornton,* 538 F.2d 27 (2d Cir. 1976), we held that when a motor vehicle is seized by the U.S. Customs Service for forfeiture the government should, in view of the owner's vital interest in the vehicle, which may be his only means of livelihood, act within 24 hours on a petition for mitigation. *Id.* at 33. The Ninth Circuit has likewise held that prompt action is essential. *Von Neumann v. United States, supra,* 729 F.2d at 659–60. As the court there observed:

"The final factor in the analysis is the prejudice to the individual caused by the delay. In addition to possible loss of essential witnesses or evidence, a claimant may also be prejudiced by unanticipated, unrecoverable, expenses resulting from a seizure of his vehicle, sudden disruption of travel plans, inconvenience, or even peril, he thereby experiences." *Id.* at 662.

In the present case there is evidence that Johns suffered serious prejudice from the delay. The INS was informed within days after the seizure that the seized vehicle was not only his source of livelihood as a cross-country trucker but his living quarters. If it were returned within a reasonably short time he might earn enough to pay his monthly installment obligation; otherwise it would be repossessed by the lienor. More important, if he received a

prompt decision, either way, on his petition for mitigation he would be able to adopt a living plan accordingly. As it turned out he was left in limbo for 65 days, making it all the more difficult to meet the mitigation terms (specifically the $5,000 fine) eventually granted.

The responsibility for the delay rests with some or all of the government officials charged with handling and acting upon Johns' petition. The INS is part of the Department of Justice, 8 U.S.C. § 1551. Ultimately the Attorney General is responsible under the Immigration and Naturalization Act for immigration and naturalization policies, 8 U.S.C. § 1103, and pursuant to 28 U.S.C. § 509 has delegated to the INS Commissioner the authority to administer the Act, 8 C.F.R. § 100.2(a), 28 C.F.R. § 0.105. Regional Commissioners and District Directors are in turn responsible for administration and enforcement of these laws and regulations within their geographic areas, subject to the Commissioner's general supervision, 8 C.F.R. § 100.-2(d) and (e).

There is no dispute about the authority of the INS to have Johns' vehicle, admittedly worth more than $10,000, declared forfeited in a judicial proceeding. 8 C.F.R. § 274.12. Under 8 C.F.R. § 274.13(a) Johns had the right to apply to the Attorney General for mitigation of the forfeiture. However, § 274.13(d) authorizes the Regional Commissioner to deny mitigation relief and § 274.15(a) provides that "[i]n addition to discretionary authority to grant relief by way of complete remission of forfeiture, *the regional commissioner may mitigate forfeitures of seized conveyances.*" (Emphasis supplied). Section 274.19, however, adds complexity to the scheme by providing:

"(a) If the petition involves a case which has been referred to the U.S. Attorney for institution of judicial forfeiture, the regional commissioner shall transmit the petition to the U.S. Attorney for the judicial district in which the seizure occurred...."

"(b) The regional commissioner shall initiate a Service investigation into the merits of every petition transmitted to the U.S. Attorney, and shall, if requested, promptly submit a report to the U.S. Attorney.

"(c) Upon receipt of a petition and a copy of the investigation, the United States Attorney shall forward a copy of the petition, the report, and a recommendation as to the grant or denial of the petition to the Assistant Attorney General, Criminal Division, Department of Justice for adjudication." 8 C.F.R. § 274.19.

These regulations are inconsistent to the extent that they do not clearly fix the responsibility, as between the Regional Commissioner and the Assistant Attorney General, Criminal Division, for mitigating forfeitures of seized conveyances. Sections 274.13(d) and 274.15(a) appear to delegate that power to the Regional Commissioner whereas § 274.19(b) and (c) seem to limit the Regional Commissioner's power to that of investigating and recommending, with the ultimate adjudication to be made by the Assistant Attorney General, Criminal Division. The regulations are also unclear as to how a petition for mitigation filed with the Attorney General under § 274.13(a) turns up in the hands of the Regional Commissioner under § 274.19(a), which directs the latter in a judicial forfeiture case (which is the type involved here) to "transmit the petition to the U.S. Attorney." The latter regulation would indicate that the starting point should be with the Regional Commissioner in a petition such as the present one.

Regardless how these confusing regulations are interpreted, however, it is clear that delay in the processing of the present petition for mitigation might be attributable to the Regional Commissioner McKinley. If, for instance, he took an excessive amount of time to conduct the investigation required of him by § 274.19(b) he would be responsible in part for the denial of due process in the present case. The same, of course, could be true of a U.S. Attorney or

of the Assistant Attorney General, Criminal Division.

For these reasons, I would reverse the order dismissing the complaint as to Regional Commissioner McKinley and provide that the remand be without prejudice to Johns' right to add the Assistant Attorney General, Criminal Division and the U.S. Attorney as defendants.[1]

---

1. The reinstatement of the complaint does not, of course, affect defendant Nelson's right to obtain an adjudication of his affirmative defense of immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Nor would it preclude any added defendants (e.g., the Assistant Attorney General and the U.S. Attorney) from pleading immunity as a defense and obtaining such an adjudication. *Id.* at 815, 102 S.Ct. at 2737.